**OCCIDENTAL/NEBRASKA FEDERAL SAVINGS BANK, Plaintiff and Appellant,**

v.

**Daniel S. MEHR, Kathryn C. Mehr, Daniel S. Mehr II, and Deborah L. Mehr, Defendants and Appellees.**

No. 890136–CA.

Court of Appeals of Utah.

April 19, 1990.

Glen W. Roberts (argued), Walker Kennedy III, Woodbury, Bettilyon, Jensen, Kesler & Swinton, Salt Lake City, for plaintiff and appellant.

Lynn S. Davies (argued), Richards, Brandt, Miller & Nelson, Salt Lake City, for defendants and appellees.

Before GREENWOOD, JACKSON and ORME, JJ.

## OPINION

JACKSON, Judge:

Occidental/Nebraska Federal Savings Bank (Occidental) appeals a judgment in which the trial court concluded that, because a trustee's sale was valid, a subsequent trustee's sale of the same property under the same trust deed was of no effect. Occidental also appeals the trial court's grant of attorney fees and costs to the Mehrs as the prevailing parties. We affirm.

The parties stipulated to the facts at trial. In 1983, the Mehrs obtained a loan secured by a trust deed on certain real property. At the time this claim arose, Occidental was the beneficiary of the trust deed. The Mehrs fell behind in their payments, and on July 16, 1985, Occidental recorded a notice of default. This notice of

default specifically identified the trust deed, gave the names of the Mehrs as the trustors, and included the book number and page number where the trust deed was recorded. This notice of default, however, misdescribed the property to be foreclosed by omitting three lots.

On September 9, 1985, Occidental recorded an amended notice of default which added the previously omitted lots to the property description. On November 13, 1985, Occidental mailed the Mehrs a notice of sale scheduling a trustee's sale of the complete property for December 16, 1985.

The only bid at the December 16, 1985, trustee's sale was from Occidental for $983,086.33. Occidental's purchase at this price resulted in a deficiency, stipulated to at trial, of $7,339.44. Within three months of the sale, as required by Utah Code Ann. § 57–1–32 (1974), Occidental sued to collect the deficiency resulting from the December trustee's sale. The trustee's deed from the December sale, however, had not been recorded.

After filing this action to collect the deficiency, Occidental claims it came to believe that the trustee's sale in December 1985 was procedurally defective. The defect is alleged to be in the sending of the notice of sale only two months after the filing of the amended notice of default, not the required three months, *see* Utah Code Ann. § 57–1–24 (1974). The notice of sale, however, was sent more than three months after the original notice of default was recorded.

Subsequently, Occidental sent a new notice of sale to the Mehrs scheduling a trustee's sale for April 16, 1986. The same property sold in December 1985 was sold a second time at a trustee's sale held on April 16, 1986. At this sale, Occidental again was the only bidder, bidding only $400,000, in contrast to its $983,086.33 bid in December.

Following the April sale, Occidental amended the complaint in its deficiency action to reflect the deficiency created by the April sale. In defense of the amended claim for a deficiency judgment, the Mehrs argued that the December trustee's sale

was valid and that the April sale had no effect. The trial court concluded that the first trustee's sale was valid and entered judgment against the Mehrs for a $7,339.44 deficiency resulting from the December 1985 sale. The trial court also awarded attorney fees and costs of $4,451.98 to the Mehrs.

I.

■ Occidental contends that, because only two months elapsed from the filing of the amended notice of default until the notice of the initial sale was sent, the December 1985 trustee's sale pursuant to that notice of sale was invalid.

Utah Code Ann. § 57–1–23 (1974) confers upon a trust deed trustee the power to sell trust property if the trustor breaches a secured obligation. This power of sale must be exercised in accordance with Utah Code Ann. § 57–1–24 (1974), which provided:

> The power of sale herein conferred upon the trustee shall not be exercised until:
>
> (a) the trustee shall first file for record, in the office of the recorder of each county wherein the trust property or some part or parcel thereof is situated, a notice of default, identifying the trust deed by stating the name of the trustor named therein and giving the book and page where the same is recorded or a description of the trust property, and containing a statement that a breach of an obligation for which the trust property was conveyed as security has occurred, and setting forth the nature of such breach and of his election to sell or cause to be sold such property to satisfy the obligation;
>
> (b) not less than three months shall thereafter elapse; and
>
> (c) after the lapse of at least three months the trustee shall give notice of sale as provided in this act.

In this case, the original notice of default was filed on July 26, 1985. This notice identified the trust deed by naming the Mehrs as the trustors, and it identified the book and page number where the trust

**220**

deed was recorded. This notice of default, however, contained an incomplete description of the property to be foreclosed.

Later, an amended notice of default was filed which described the whole property to be foreclosed. Two months after the amended notice of default was filed, Occidental gave notice that a trustee's sale of the entire property would be held on December 16, 1985. This sale proceeded as scheduled, and the trustee accepted Occidental's bid of $963,086.33.

Occidental now contends that the procedures it employed to exercise its rights as beneficiary of the trust deed were so defective that the ultimate objective of those procedures, the December 1985 trustee's sale, should be invalidated.

■ Generally in legal proceedings a party with knowledge of all the facts will not be allowed to take a position, pursue that position to fruition, and later, with no substantial change in circumstances, return to attack the validity of the prior position or the outcome flowing from it. *See* 28 Am.Jur.2d *Estoppel and Waiver* §§ 68–70 (1966). Occidental, the beneficiary of the trust deed, caused the first notice of default to be recorded and sent. Occidental also caused the amended notice of default, as well as the notice of sale, to be filed and sent. Occidental then caused a trustee's sale to be held pursuant to its own preparatory work. At all times Occidental had full knowledge of all relevant facts. To permit Occidental to follow through with the December 1985 trustee's sale relying on its work and then allow it, with the benefit of hindsight, to take an inconsistent position attacking its own work would ignore principles of estoppel arising when a party takes inconsistent positions. While such estoppel principles are most often applied in judicial actions, the facts and circumstances surrounding a nonjudicial foreclosure make the situations sufficiently similar. Not recognizing the applicability of these principles in similar situations would cast a shadow of uncertainty on numerous commercial procedures. Absent compelling reasons, Occidental cannot rely on its own claimed mistake to invalidate the first trustee's sale. We must determine whether there is sufficient justification to allow Occidental to invalidate the first sale based on the alleged procedural defect.

■ The "detailed procedural requirements for a trustee's sale of real property are intended to protect the debtor/trustor." *Jones v. Johnson*, 761 P.2d 37, 41 n. 2 (Utah Ct.App.1988). The objective of the notice requirements is to protect the rights of those with an interest in the property to be sold. The sufficiency of the notice or the validity of a subsequent sale will not be affected by immaterial errors and mistakes if those objectives are met. *Concepts, Inc. v. First Sec. Realty Servs. Inc.*, 743 P.2d 1158, 1159 (Utah 1987).

In the case at hand, Occidental filed a notice of default regarding a particular deed of trust. This notice identified the trustor and the particular trust deed to be foreclosed. Especially where the trustor has not claimed to have been confused or otherwise prejudiced, the failure to describe fully and correctly the property to be foreclosed was not a flaw sufficient to vitiate the entire procedure. At the time, Utah Code Ann. § 57–1–24 (1974) required that the notice of default identify the trust deed by "stating the name of the trustor ... and giving the book and page where the same is recorded *or* a description of the trust property ..." (emphasis added). Because of the disjunctive language, the July 1985 notice of default complied with the requirements of section 57–1–24.[1]

The notification achieved by the original notice of default was sufficient to alert those with an interest in the trust property of impending foreclosure. The amended notice of default did not further the infor-

1. After the events giving rise to the current controversy, the legislature amended section 57–1–24. The 1989 version, effective July 1, 1989, requires that a notice of default include the identification of the trust deed as previously required *and* a legal description of the trust property. We express no opinion on whether the result of this case would be different under the revised statute.

mational objectives of the requirements of section 57-1-24.

■ A party may have an apparently valid trustee's sale set aside for irregularity, want of notice, or fraud if there is evidence sufficient to overcome the presumption of its validity. *Concepts, Inc.,* 743 P.2d at 1159. Notice of the sale was mailed only two months after the amended notice of default was recorded. Nevertheless, the only kinds of defects in the notice of a foreclosure sale that will justify a renunciation of the sale are "those that would have the effect of chilling the bidding and causing an inadequacy of price." *Id.* A sale once made will not be set aside unless the interests of the debtor were sacrificed or there was some fraud or unfair dealing. *Id.*

■ The evidence presented by Occidental failed to show that the procedural irregularity resulted from fraud or unfair dealing. Also, there was no evidence presented that the inaccurate description of the property or the lack of a three-month time period between the amended notice of default and the notice of sale had any chilling effect on the bidding or resulted in an inadequate bid. The interests of the debtor were not infringed by the events leading up to the sale. Absent evidence tending to show the above factors, a trustee's sale will not be set aside.

Occidental failed to comply strictly with the procedural requirements that should precede a trustee's sale. However, the steps taken afforded all parties the rights and protections the statutory requirements for a nonjudicial foreclosure were intended to ensure.

We agree with the trial court's determination that the pre-sale procedures were adequate to validate the trustee's sale of December 16, 1985. Furthermore, Occidental failed to establish any compelling justification which would allow it to utilize its own error to invalidate the December 1985 trustee's sale. Finally, the trustor, to whom the protections of the trust deed statute inure, has not challenged the validity of the initial sale. We affirm the trial court's decision upholding that sale.

## II.

■ Occidental's second contention on appeal is that the trial court erred in granting the Mehrs attorney fees as the prevailing party.

■ Attorney fees are awardable only if provided for by statute or contract. *Dixie State Bank v. Bracken,* 764 P.2d 985, 988 (Utah 1988) (citing *Golden Key Realty, Inc. v. Mantas,* 699 P.2d 730, 734 (Utah 1985)). In the present case, attorney fees were claimed under Utah Code Ann. § 57-1-32 (1986), which provides that the prevailing party in an action to collect the balance due upon an obligation secured by a trust deed shall be entitled to collect costs and reasonable attorney fees. Occidental contends that because a judgment was entered in its favor, it is the prevailing party in this lawsuit and should collect fees. The Mehrs, on the other hand, argue that, while a judgment was entered against them, they prevailed on the only contested issue at trial, i.e., the validity of the first trustee's sale.

In *Mountain States Broadcasting Co. v. Neale,* 783 P.2d 551 (Utah Ct.App.1989), this court held that, under the particular facts of that case, "the party in whose favor the 'net' judgment is entered must be considered the 'prevailing party' and is entitled to an award of its fees." *Id.* at 556. We, however, rejected a blanket adoption of the "net judgment" rule except as a good starting point in making determinations of which party prevailed. That opinion also noted "the need for a flexible and reasoned approach to deciding in particular cases who actually is the prevailing party." *Id.* at 556 n. 7.

■ Where there was a right to attorney fees, Utah courts have allowed the party who successfully prosecuted or defended against a claim to recover the fees attributable to those claims on which the party was successful. *See id.* at 566 n. 10 (reasonable fee excludes amounts attributable to issues or claims on which party otherwise entitled to fee was unsuccessful); *Stacey Proper-*

*ties v. Wixen,* 766 P.2d 1080, 1085 (Utah Ct.App.1988) (defendant was entitled to attorney fees for the counterclaims on which he was successful as well as for his successful defense of plaintiff's attempt to accelerate a promissory note), *cert. denied,* 779 P.2d 688 (Utah 1989); *see also Graco Fishing & Rental Tools, Inc. v. Ironwood Exploration, Inc.,* 766 P.2d 1074, 1080 (Utah 1988) (grant of attorney fees was remanded for a determination of only those fees attributable to the pursuit of successful claims).

At trial, Occidental obtained a judgment of approximately $7,300. It argues that a money judgment in its favor entitles it to attorney fees as the prevailing party. As stated above, this court has recognized the need for a flexible and reasoned approach to making determinations of who is the prevailing party.

In the case at hand, Occidental claimed a balance due of over $600,000 resulting from the trustee's sale held in April 1986. The Mehrs defended against this claim by asserting that the December 1985 sale was valid, and any subsequent "sale" could not give rise to a deficiency.

The only contested issue at trial was whether the deficiency would be based on the December sale or the April sale. At trial, Occidental's calculations of the deficiency resulting from the December 1985 trustee's sale, i.e., $7,300, were stipulated to by the Mehrs. The remainder of the litigation involved Occidental's efforts to establish its claim to a deficiency resulting from the invalid trustee's sale in April 1986. The Mehrs were successful in defending against Occidental's claim for a $600,000 deficiency based on the April sale. The Mehrs successfully demonstrated the validity of the December sale, thus the deficiency judgment was for the stipulated amount of $7,339.44.[2] In light of the circumstances involved and the issues contested at trial, the trial court did not err in granting the Mehrs attorney fees and costs as the prevailing party.

The decision of the trial court is affirmed in its entirety.

GREENWOOD and ORME, JJ., concur.

---

2. Occidental's calculations of the deficiency, to which the Mehrs stipulated, included all of Occidental's costs and attorney fees incurred up to and including the December 1985 trustee's sale.