2011 UT App 290

RM LIFESTYLES, LLC; and Wood-bridge Realty, LC, Plaintiffs and Appellees,

v.

Bryan K. ELLISON; Jamie Ellison; and Commonwealth Properties, LC, Defendants and Appellants.

No. 20100510–CA.

Court of Appeals of Utah.

Aug. 25, 2011.

---

E. Craig Smay, Salt Lake City, for Appellants.

James H. Deans, Salt Lake City, for Appellees.

Before Judges DAVIS, VOROS, and CHRISTIANSEN.

## OPINION

CHRISTIANSEN, Judge:

¶ 1 Defendants Bryan K. Ellison, Jamie Ellison, and Commonwealth Properties, LC (collectively, the Ellisons), challenge the trial court's determination that a trustee's sale conducted in December 2009 was valid. The sale resulted in plaintiffs RM Lifestyles, LLC, and Woodbridge Realty, LC (collectively, RM Lifestyles), obtaining a trustee's deed to the real property located in Holladay, Utah (the Property). The Ellisons also challenge the trial court's determination that they unlawfully detained the Property. We affirm.

## BACKGROUND

¶ 2 To understand the unlawful detainer action that is the subject of this appeal and the arguments made on appeal, it is necessary to begin with the events that led to the trustee's sale, through which RM Lifestyles obtained the trustee's deed it sought to enforce in its unlawful detainer action.

### I. Events Prior to the Unlawful Detainer Action

#### A. Trust Deed, Default, and Substitution of Trustee

¶3 In exchange for National City Bank lending the Ellisons $800,000 to buy the Property, on July 27, 2007, the Ellisons executed a Deed of Trust to secure the loan for the Property, which listed National City Mortgage, a division of National City Bank, (collectively, National City) as the beneficiary and U.S. Title as the trustee. The Deed of Trust was recorded on August 1, 2007. In 2009, after the Ellisons defaulted on the loan secured by the Deed of Trust, National City sent a referral to eTitle Insurance Agency (eTitle) directing that entity to initiate foreclosure proceedings on the Property. eTitle recorded a Notice of Default on September 14, 2009. Nine days later, an agent of National City executed a document substituting eTitle for U.S. Title, the original trustee, which substitution was recorded in Salt Lake County on October 13, 2009. This substitution of trustee document stated, "[National City] hereby ratifies and confirms all actions taken on its behalf by [eTitle] prior to the recording of this instrument."

¶4 In anticipation of the upcoming trustee's sale, eTitle posted a Notice of Trustee's Sale on December 16, 2009. The Ellisons then executed a quitclaim deed transferring the Property to Commonwealth Property Advocates, LLC (Commonwealth), on December 21, 2009. Commonwealth's attorney also filed a lis pendens action against National City in federal court on December 31, 2009.

#### B. Trustee's Sale

¶5 Having received no communications from National City of its intent to cancel the sale, Tom Cook, on behalf of eTitle, conducted the trustee's sale of the Property on January 13, 2010. Angela Johnson, who had a professional relationship with the Ellisons' attorney, attended the sale to distribute flyers and communicate to potential buyers that National City allegedly desired the sale to be cancelled. RM Lifestyles made the highest of several bids and paid Cook the bid price. Cook then executed a trustee's deed conveying the Property to RM Lifestyles.

### II. The Unlawful Detainer Action

¶6 The day following the trustee's sale, RM Lifestyles posted a Notice of Eviction at the Property demanding that the occupants vacate the Property within five days or suffer treble damages. When the occupants did not vacate the Property within the requisite time period, RM Lifestyles filed an unlawful detainer action.

#### A. Service

¶7 Because of three unsuccessful attempts to serve the Ellisons at the Property, RM Lifestyles moved for and the trial court granted RM Lifestyles' request to serve the Ellisons by mail. On February 3, 2010, a district court employee mailed, via regular mail, to the Property's address the summons, complaint, and order authorizing this type of service. The order stated that the Ellisons "ha[d] six days (pursuant to Section 78B–6–807 ...) from the date the papers [were] mailed to file a responsive pleading in this action." On February 10, 2010, the Ellisons' attorney received a copy of the complaint. On February 17, 2010, after receiving no response from the Ellisons, the trial court entered default against the Ellisons wherein the trial court granted RM Lifestyles "[a]ll rights to occupancy." Two days later, on February 19, the Ellisons filed an answer to the unlawful detainer complaint. The answer stated two defenses: (1) "The Complaint fails to state a cause of action upon which relief can be granted," and (2) "Service by mail is improper, and the Court lacks jurisdiction, because [RM Lifestyles] has known at all times the locale of [the Ellisons] and failed to serve them properly."

¶8 On February 24, the trial court conducted an immediate occupancy hearing. During the hearing, counsel for both parties made their appearances,[1] and the trial court

---

1. Although the Ellisons challenged the propriety of the service and the jurisdiction of the trial court in their answer, there is no indication that the Ellisons' appearance at the February 24 hearing was in any way limited to addressing these issues. In fact, given the trial court's conclu-

determined that it would "not issue an Order of Immediate Occupancy," that the Ellisons must "post a $7,000 bond by Monday, March 1, 2010," and that additional bonds would need to be posted each month the Ellisons occupied the Property. Following this hearing, a dispute over the correct amount of the bond arose, and the Ellisons failed to post the bond amount ordered by the trial court.

¶ 9 On March 4, the Ellisons filed a motion for a temporary restraining order (TRO), in which they argued that, pursuant to rule 65A of the Utah Rules of Civil Procedure, the trial court should vacate its prior orders that were issued without jurisdiction due to improper service and "restrain[ RM Lifestyles] from attempting to evict" the Ellisons from the Property. The following day, the trial court conducted a hearing and granted the Ellisons' TRO request conditional upon the Ellisons posting a bond, which they again failed to post. During the hearing, the trial court also concluded that service was proper and scheduled a trial date.[2] The Ellisons then filed a petition for mandamus with the Utah Supreme Court challenging the trial court's determination on the jurisdiction issue. The case was assigned to this court, and we denied the petition.

B. Trial and the Trial Court's Findings and Conclusions

¶ 10 The trial court conducted a bench trial on April 19, 2010. RM Lifestyles presented two witnesses: Michael Johnson, the owner of Woodbridge Realty, and Tom Cook, the individual who conducted the trustee's sale. Although the Ellisons appeared at trial, they continued to maintain their position that improper service deprived the trial court of jurisdiction. They presented limited evidence at trial by proffering evidence related mainly to service and introduced two exhibits. Nevertheless, the Ellisons fully participated in the trial by making arguments, objecting to the form of RM Lifestyles' direct examination, and cross-examining RM Lifestyles' witnesses.

¶ 11 Following the trial, the trial court made findings of fact and concluded that the trustee's sale and the trustee's deed that resulted from the sale were both valid. In so concluding, the trial court rejected the Ellisons' argument that the notice of default was void because eTitle filed the notice of default before being substituted as trustee. The trial court determined that Utah Code section 57–1–22(1) allowed National City to ratify the notice of default filed by eTitle when the substitution of trustee was subsequently recorded and that the substitution of trustee did not violate the statute of frauds. The trial court also addressed the propriety of service and determined that service by mail was proper. Finally, the trial court awarded RM Lifestyles treble damages and appropriate fees and costs. The Ellisons appeal.

ISSUES AND STANDARDS OF REVIEW

¶ 12 The Ellisons argue that the trial court erred in its interpretation of the relevant statutes, specifically in determining that Utah Code section 57–1–22(1) allowed National City to ratify eTitle's action of filing a notice of default before eTitle had been substituted as the trustee. *See* Utah Code Ann. § 57–1–22(1) (2010). The Ellisons also assert that National City and eTitle violated the statute of frauds because the execution of the substitution of trustee was not initially in writing. " 'We review a [trial] court's interpretation of a statute for correctness.' " *O'Dea v. Olea*, 2009 UT 46, ¶ 15, 217 P.3d 704 (citation omitted).

¶ 13 The Ellisons also assert that the trial court lacked personal jurisdiction due to improper service of the complaint. Because the determination of whether a trial court lacked personal jurisdiction is a question of law, we review its determination for correctness. *See Franklin Covey Client Sales, Inc. v. Melvin*, 2000 UT App 110, ¶ 8, 2 P.3d 451.

---

sions, it appears that the hearing focused on the issue of occupancy rather than on jurisdiction. However, our review of this hearing is limited to the applicable minute entry because a transcript of the hearing was not included in the appellate record.

2. Again, the Ellisons have not provided a transcript of this March 5 hearing, and thus, our review of what occurred during this hearing is limited to the trial court's minute entry, order, and findings of fact.

¶ 14 Finally, the Ellisons claim that the trial court's decision to allow Cook to testify violated rule 702 of the Utah Rules of Evidence and rule 3.7 of the Utah Rules of Professional Conduct. *See* Utah R. Evid. 702; Utah R. Prof'l Conduct 3.7(a). " 'The trial court has wide discretion in determining the admissibility of expert testimony, and such decisions are reviewed under an abuse of discretion standard. Under this standard, we will not reverse [a decision to admit or exclude expert testimony] unless the decision exceeds the limits of reasonability.' " *State v. Hollen*, 2002 UT 35, ¶ 66, 44 P.3d 794 (alteration in original) (quoting *State v. Larsen*, 865 P.2d 1355, 1361 (Utah 1993)); *see also State v. Clopten*, 2009 UT 84, ¶ 6, 223 P.3d 1103.

## ANALYSIS

### I. Validity of the Trust Deed Sale After the Sale

¶ 15 After a trust deed sale,

[a] previous owner[ or] trustor ... of a property is guilty of unlawful detainer if the person: (1) defaulted on his or her obligations resulting in disposition of the property by a trustee's sale ...; and (2) continues to occupy the property after the trustee's sale ... after being served with a notice to quit by the purchaser.

Utah Code Ann. § 78B–6–802.5 (Supp.2010).[3] To defend against the unlawful detainer action, the Ellisons argued that the trust deed sale was void because eTitle recorded the notice of default before it had been substituted as trustee, that the statute did not allow National City to ratify eTitle's action, and

that the execution of the substitution of trustee violated the statute of frauds. However, we do not reach the merits of these issues because the Ellisons, in attacking the trust deed sale's validity after the sale, have not met their burden of proving that the alleged irregularity affected their rights.[4]

¶ 16 "A sale once made will not be set aside unless the *interests of the debtor* were sacrificed or there was some attendant fraud or unfair dealing." *Concepts, Inc. v. First Sec. Realty Servs., Inc.*, 743 P.2d 1158, 1160 (Utah 1987) (per curiam) (emphasis in original). "[T]he remedy of setting aside a trustee's sale is appropriate only in cases which reach unjust extremes." *Thomas v. Johnson*, 801 P.2d 186, 188 (Utah Ct.App. 1990); *cf. Timm v. Dewsnup*, 2003 UT 47, ¶¶ 36–37, 86 P.3d 699 (" 'A party who seeks to have a trustee sale set aside for irregularity, want of notice, or fraud has the burden of proving his contention, it being presumed, in the absence of evidence to the contrary, that the sale was regular. Defects in the notice of foreclosure sale that will authorize the setting aside of the sale must be those that would have the effect of chilling the bidding and causing an inadequacy of price. The remedy of setting aside the sale will be applied only in cases which reach unjust extremes.' Whatever irregularities [the trustor] may allege in the technicalities of the notice requirement, they are immaterial if she does not demonstrate that she was unable to protect her interests, or if there were a resulting 'effect of chilling the bidding and causing an inadequacy of price.' " (quoting *Concepts, Inc.*, 743 P.2d at 1159)).

---

3. This statute became effective on May 12, 2009, *see* Utah Code Ann. § 78B–6–802.5 history (Supp.2010), and thus, was in effect when RM Lifestyles filed its complaint in this action on January 21, 2010. Therefore, we address this statute even though the parties failed to specifically refer to this version of the statute.

4. The Ellisons could have challenged the sale before it occurred by seeking an injunction, which would have allowed them to challenge the alleged improper notice of default or statutory violations and have a court determine their rights before the sale was completed and a trustee's deed was executed. *See, e.g., Harline v. Campbell*, 728 P.2d 980, 981 (Utah 1986) (considering a case of a party who filed an injunction

action three days before the foreclosure sale was scheduled and issuing "a temporary restraining order which prevented the scheduled foreclosure sale of the subject property"); *Redd v. Western Sav. & Loan Co.*, 646 P.2d 761, 762 (Utah 1982) (considering an injunction action that requested the foreclosure sale be halted until a determination about a provision in the trust deed was made); *see also American Falls Canal Sec. Co. v. American Sav. & Loan Ass'n*, 775 P.2d 412, 414 (Utah 1989) ("[A] party otherwise in position to object to a mortgage foreclosure sale may well be precluded from doing so based upon conduct sufficient to bring into operation the doctrines of waiver and estoppel.").

¶ 17 Even if we were to agree with the Ellisons that filing the notice of default before the substitution of trustee was recorded was an irregularity in the sale, the Ellisons failed to establish that such an irregularity affected their interests in the Property.[5] *See Concepts, Inc.,* 743 P.2d at 1159–60. Although having the Property sold at a trust deed sale affected the Ellisons' property interests, the Ellisons produced no evidence to show that the irregularity they claim resulted in their being unable to protect their interests. *See Occidental/Nebraska Fed. Sav. Bank v. Mehr,* 791 P.2d 217, 221 (Utah Ct. App.1990) ("The evidence presented . . . failed to show that the procedural irregularity resulted from fraud or unfair dealing. Also, there was no evidence presented that the inaccurate description of the property or the lack of a three-month time period between the amended notice of default and the notice of sale had any chilling effect on the bidding or resulted in an inadequate bid. The interests of the debtor were not infringed by the events leading up to the sale. Absent evidence tending to show the above factors, a trustee's sale will not be set aside.").

¶ 18 The Ellisons did not produce any evidence that the alleged irregularity resulted in their receiving defective notice of the sale or in any other way affected their ability to protect their rights. *See, e.g., Concepts, Inc.,* 743 P.2d at 1160. Nor did the Ellisons establish that having the substitute trustee file the notice of default before the substitution of trustee was executed or recorded affected their right to cure their default before the property was sold. In fact, the Ellisons do not claim that they were denied the right to cure the default or ever planned on or were capable of curing the default. *See generally McCarthy v. Lewis,* 615 P.2d 1256, 1260 (Utah 1980) (determining that the plaintiff had actual notice of the sale because he was present but did not object or offer to pay delinquent amounts owed). Given the lack of evidence the Ellisons presented in this case, we affirm the trial court's decision that the trustee's sale was valid and its ultimate determination that the Ellisons unlawfully detained the Property after the trustee's sale.

## II. Service

¶ 19 The Ellisons also argue on appeal that the trial court lacked personal jurisdiction over them because they were never properly served. The unlawful detainer statute states, "The court may authorize service by publication or mail for cause shown. . . . Service by mail is complete three days after mailing." Utah Code Ann. § 78B–6–807(4), (6) (2008). The Ellisons argue that for service in an unlawful detainer action to comply with constitutional due process requirements, the service-by-mail provision in that statute must require that any mailing include a signed receipt as is required in rule 4 of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 4(d)(2)(A). However, the Ellisons' argument overlooks that rule 4(d)(4) of the Utah Rules of Civil Procedure allows other means of service of process as long as those means are "reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action to the extent reasonably possible or practicable." *See* Utah R. Civ. P. 4(d)(4)(B). Additionally, no specific form or method of service has been constitutionally delineated by our supreme court in rule 4(d)(4). "Although the exact requirements of due process may vary from situation to situation, the minimum requirements of due process include adequate notice and an opportunity to be heard in a meaningful manner." *Chen v. Stewart,* 2004 UT 82, ¶ 68, 100 P.3d 1177. The Ellisons clearly had adequate notice of the proceedings because they appeared at all of the proceedings for this case, and they were given a meaningful opportunity to be heard on the merits of the case.

---

**5.** This heightened proof required after a sale has been finalized is also in accordance with the presumption that a trustee's deed, which states that it complies with the statutory requirements, is "conclusive evidence in favor of bona fide purchasers" of the trustee's deed's validity. *See* Utah Code Ann. § 57–1–28(2)(c)(ii) (2010); *Blod-*

*gett v. Martsch,* 590 P.2d 298, 303 (Utah 1978) ("Our statutes protect a bona fide purchaser at a public sale under a trust deed, by permitting him to rely on the recitals in the deed he receives from the trustee after the sale. Such a sale cannot be set aside because of irregularities in the publication or posting of notice.").

¶ 20 We recognize that the Ellisons may not have received notice before the default judgment was entered against them for their failure to file an answer to RM Lifestyles' complaint. However, the proper remedy from the entry of such default is to seek to set aside the default judgment. Although it does not appear that the Ellisons officially moved to set aside the default judgment initially entered against them, the trial court clearly provided such relief when it allowed the parties to proceed to argue the merits of the case. Additionally, by entering an appearance, the Ellisons demonstrated that they had actual notice of the proceedings, thereby waiving any argument related to lack of personal jurisdiction based on lack of notice. *See id.* ¶¶ 66, 70 (discussing a party's "ability to waive the right to notice" and determining that "[b]y entering ... an appearance, [the party] effectively waived her right to be served" because she clearly "had adequate notice of the proceedings"). Thus, because the Ellisons received sufficient notice and because they had a meaningful opportunity to be heard, we determine that the trial court correctly asserted personal jurisdiction in this case.

### III. Tom Cook's Testimony

¶ 21 Finally, the Ellisons argue that the trial court violated rule 702 of the Utah Rules of Evidence and rule 3.7(a) of the Utah Rules of Professional Conduct by allowing Cook's testimony at trial. Although the Ellisons objected to specific questions during RM Lifestyles' direct examination of Cook, they did not make the specific arguments before the trial court they now make on appeal. Because the Ellisons have not preserved them for appeal, we do not address these issues. *See 438 Main St. v. Easy Heat, Inc.,* 2004 UT 72, ¶ 51, 99 P.3d 801.

### CONCLUSION

¶ 22 We affirm the trial court's determination that the trustee's deed was valid and that the Ellisons unlawfully detained the Property after the trustee's sale. Furthermore, the Ellisons waived any error in ser-

vice and did not preserve the issue related to Cook's testimony.

¶ 23 Affirmed.

¶ 24 I CONCUR: JAMES Z. DAVIS, Presiding Judge.

¶ 25 I CONCUR IN THE RESULT: J. FREDERIC VOROS JR., Judge.