IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Stephanie Reynolds, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellant, | ) | Case No. 20110129-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| James H. Woodall; Citibank Federal | ) | (July 27, 2012) |
| Savings Bank; Corlene Kemker Trust; | ) | |
| U.S. Bank, N.A.; Mortgage Electronic | ) | 2012 UT App 206 |
| Registration Systems, Inc.; eTitle | ) | |
| Insurance Agency; and John Does of | ) | |
| unknown number, | ) | |
| | ) | |
| Defendants and Appellees. | ) | |

-----

Third District, Salt Lake Department, 090919624
The Honorable Tyrone E. Medley

Attorneys:    E. Craig Smay, Salt Lake City, for Appellant
              John A. Snow, Stephen K. Christiansen, and Seth M. Mott, Salt Lake
              City, for Appellee Corlene Kemker Trust
              Anthony C. Kaye, Angela W. Adams, and Steven D. Burt, Salt Lake
              City, for Appellee Citibank Federal Savings Bank
              Jeffery S. Williams and Jed K. Burton, Salt Lake City, for Appellee U.S.
              Bank, N.A.
              Peter J. Salmon, San Diego, California, for Appellee James H. Woodall

-----

Before Judges McHugh, Thorne, and Roth.

McHUGH, Presiding Judge:

¶1      Stephanie Reynolds appeals from the trial court's dismissal of her complaints against James H. Woodall, Citibank Federal Savings Bank (Citibank), and U.S. Bank, N.A. (U.S. Bank).  She also appeals the trial court's summary judgment in favor of the Corlene Kemker Trust (the Kemker Trust).  We affirm.

¶2      In October, 2004, Reynolds purchased real property located in Sandy, Utah (the Property).[1]  As part of that transaction, Reynolds obtained mortgage loans from a third party lender and executed two promissory notes, evidencing her repayment obligations.  Reynolds provided a separate trust deed to secure each of the promissory notes, which were recorded in first and second position against the Property.  On April 4, 2006, Reynolds refinanced the promissory note secured by the second position trust deed.  In doing so, Reynolds executed a promissory note in favor of Citibank, secured by a new second position trust deed, conveying the property in trust to First American Title of Utah (First American) as trustee for Citibank.  First American recorded the trust deed on April 19, 2006.  Approximately two years later, on February 27, 2008, Reynolds refinanced the first loan, executing a note and trust deed in favor of Bank of Utah, which was recorded in first position pursuant to a subordination agreement with Citibank.  Thereafter, U.S. Bank became the successor-in-interest to Bank of Utah on the promissory note secured by the first position trust deed.

¶3      Subsequently, Reynolds defaulted on her payment obligations under both promissory notes.  Woodall, acting for Citibank, recorded a notice of default under the second position trust deed in Salt Lake County on April 16, 2009, but did not serve notice on Reynolds.  Citibank had not executed or recorded a substitution of trustee appointing Woodall at that time.  On June 30, 2009, eTitle Insurance Agency (eTitle) recorded a notice of default and election to sell, purporting to act as successor trustee under the first position trust deed.[2]

---

[1]"Because this is an appeal from the district court's grant of a motion to dismiss and grant of summary judgment, we recite the facts favorably to [Reynolds]."  *See Pintar v. Houck*, 2011 UT App 304, ¶ 1 n.1, 263 P.3d 1158.

[2]The first position trust deed was then held in trust by Mortgage Electronic Registration Systems, Inc. (MERS).  On September 18, 2009, U.S. Bank recorded a

(continued...)

¶4    On August 11, 2009, Woodall posted a notice of trustee's sale on the Property occupied by Reynolds, and on September 16, 2009, he conducted the trustee's sale. The Kemker Trust purchased the Property, which was conveyed to it by a trustee's deed dated September 17, 2009, and recorded on September 24, 2009. The Kemker Trust took title to the Property subject to the first position deed of trust, naming U.S. Bank as the beneficiary. The Kemker Trust satisfied the amounts due on the promissory note in favor of U.S. Bank, resulting in the reconveyance of the first position trust deed. Thus, the Kemker Trust then owned the Property unencumbered by any trust deeds.

¶5    Approximately a month-and-a-half after the trustee's sale, on October 30, 2009, Citibank executed and recorded a substitution of trustee, naming Woodall as successor trustee. The substitution of trustee document states, "[Citibank] hereby ratifies and confirms any and all actions taken on [its] behalf by [Woodall] prior to the recording of this Substitution of Trustee."

¶6    Reynolds filed a complaint challenging the validity of the trustee's sale on the ground that neither Woodall nor eTitle had authority to foreclose on the Property.[3] The amended complaint sought, in part, a declaratory judgment and an order quieting title in Reynolds. In response, Woodall filed a motion to dismiss for failure to state a claim upon which relief could be granted, asserting that Utah Code section 57-1-22(1)(c) allowed Citibank to ratify his actions as successor trustee after the sale. In addition, the Kemker Trust moved for summary judgment, claiming that even if Reynolds's claims against the other defendants were valid, the Kemker Trust was protected as a bona fide purchaser for value.

¶7    On February 2, 2010, the trial court dismissed Reynolds's suit against Woodall, agreeing that Citibank had ratified Woodall's actions in the written substitution of

---

[2](...continued)
substitution of trustee naming eTitle as trustee, and eTitle served a notice of sale on behalf of U.S. Bank on October 2, 2009. MERS assigned the beneficial interest in the trust deed to U.S. Bank on October 30, 2009.

[3]Except for the dismissal of U.S. Bank under rule 12(b)(6), Reynolds does not appeal the trial court's rulings related to the first position trust deed.

trustee recorded after the trustee's sale. Subsequently, on April 12, 2010, the trial court entered summary judgment quieting title in favor of the Kemker Trust.[4]

¶8     Meanwhile, Reynolds moved for the entry of default against defendants eTitle, Citibank, and U.S. Bank, because none of them had answered her amended complaint.[5] The trial court entered default against each of those defendants on March 2, 2010. Thereafter, the trial court granted U.S. Bank's motion to set aside the default and allowed U.S. Bank to file an answer. U.S. Bank then moved to dismiss the action against it on the ground that the court had already ruled that the foreclosure was valid and quieted title in the Kemker Trust. After a December 13, 2010 hearing, the trial court granted U.S. Bank's motion and entered an order dismissing the complaint against U.S. Bank on January 7, 2011.

¶9     Citibank also moved to set aside the default judgment entered against it, claiming that it had never been served. After the trial court granted that motion, Citibank moved to dismiss the action against it under rule 4(b)(i) of the Utah Rules of Civil Procedure, which allows for dismissal without prejudice if the defendant is not served within 120 days of the filing of the complaint. The court entered an order dismissing Reynolds's complaint against Citibank without prejudice on January 7, 2011.

¶10     Reynolds argues that the trial court erred by determining that Utah Code section 57-1-22 allowed Citibank to ratify actions taken by Woodall before Citibank had executed a written document appointing him as the substitute trustee. *See* Utah Code

---

[4]Reynolds immediately appealed the dismissal of her complaint against Woodall and the summary judgment in favor of the Kemker Trust. Because of Reynolds's remaining actions against the other defendants, there was no final appealable order, and we lacked jurisdiction over the appeal. *See* Utah R. App. P. 3(a). Accordingly, we dismissed Reynolds's appeal without prejudice. *See Reynolds v. Woodall*, 2010 UT App 224U, para. 7 (per curiam).

[5]Although MERS was listed as a defendant, there is no indication that Reynolds ever attempted to serve MERS. Additionally, there is no indication that eTitle challenged the default and eTitle is not a party to the appeal.

Ann. § 57-1-22(1)(c) (2010).[6]  According to Reynolds, the subsequent validation of actions taken pursuant to an oral agreement to act as the substitute trustee would violate the statute of frauds and the plain language of Utah Code section 57-1-22.  A trial court's dismissal under rule 12(b)(6) is a question of law that we review for correctness.  *See Orr v. Uintah Cnty.*, 2011 UT App 235, ¶ 5, 262 P.3d 437.  "'[W]e accept the plaintiff's description of facts alleged in the complaint to be true, but we need not accept extrinsic facts not pleaded nor need we accept legal conclusions in contradiction of the pleaded facts.'"  *Id.* (quoting *Osguthorpe v. Wolf Mountain Resorts, LC*, 2010 UT 29, ¶ 10, 232 P.3d 999); *see also* Utah R. Civ. P. 12(b)(6).

¶11    In response, the Kemker Trust contends that because Reynolds's action against Citibank was dismissed without prejudice, there is no final appealable order.  *See* Utah R. App. P. 3(a) (allowing appeals from "final orders and judgments").  To support this argument, the Kemker Trust relies on the general rule that a dismissal without prejudice is not a final appealable order unless "'the *effect* of the ruling is to finally resolve the issues.'"  *See Hales v. Oldroyd*, 2000 UT App 75, ¶ 1 n.2, 999 P.2d 588 (quoting *Bowles v. Utah Dep't of Transp.*, 652 P.2d 1345, 1346 (Utah 1982) (per curiam)).  However, a dismissal without prejudice does constitute a final appealable order "when it ends the controversy between the parties."  *See York v. Performance Auto, Inc.*, 2011 UT App 257, ¶ 4, 264 P.3d 212 (citing *Bradbury v. Valencia*, 2000 UT 50, ¶ 9, 5 P.3d 649).  The Kemker Trust does not assert that there are remaining issues for the trial court to resolve as to any party, and the record reflects that there are none.

¶12    The trial court dismissed Reynolds's claims against Citibank because Reynolds had failed to serve Citibank within 120 days of filing her amended complaint as required by rule 4(b) of the Utah Rules of Civil Procedure.  Although the rule allows for service anytime before trial in a multiparty action, under some circumstances, where the trial court has dismissed all named codefendants, it may also dismiss any unserved party who was not served within 120 days from the time the complaint was filed.  *See* Utah R. Civ. P. 4(b); *Hunter v. Sunrise Title Co.*, 2004 UT 1, ¶ 11, 84 P.3d 1163.  By the time the trial court here entered orders dismissing U.S. Bank and Citibank on January 7, 2011, it had already dismissed Reynolds's claims against Woodall under rule 12(b)(6),

---

[6]Because of amendments to subsection (3)(a) of this section of the Utah Code, we cite the version in effect at the time of the events giving rise to this action.  *Compare* Utah Code Ann. § 57-1-22 (2010), *with id.* (Supp. 2011).

granted summary judgment in favor of the Kemker Trust, and entered default against eTitle. *See supra* ¶¶ 7-9. Because the rule 4(b) dismissal of Citibank "concluded the action on the complaint" and would require Reynolds to "file a new complaint after fully complying with all statutory prerequisites, it is final for purposes of appeal." *See McVinnie v. University of Utah Hosp.*, 2004 UT App 63U, para. 2 (per curiam) (citing *Bowles* at 1346). Thus, we have subject matter jurisdiction over Reynolds's appeal.

¶13 Reynolds asserts that the trustee's sale is void because Woodall recorded the notice of default and held the trustee's sale before Citibank executed and recorded a written substitution of trustee. Reynolds argues that the plain language of Utah Code section 57-1-22 renders ineffective Citibank's attempt to ratify Woodall's actions after the trustee sale. *See* Utah Code Ann. § 57-1-22(3)(a) (2010) ("If not previously recorded, at the time of recording a notice of default, the successor trustee shall file for record . . . the substitution of trustee."). Reynolds further argues that because there was no written substitution of trustee when Woodall carried out the nonjudicial foreclosure, the subsequent attempt at ratification violates the statute of frauds. Woodall counters that Citibank's ratification of his actions through a written substitution of trustee does not implicate the statute of frauds and is authorized by statute. *See id.* § 57-1-22(1)(c). However, we need not reach the merits of these issues because Reynolds, in attacking the validity of the trustee's sale, has not alleged that the challenged substitution of trustee impacted her rights. *See Bailey v. Bayles*, 2002 UT 58, ¶ 13, 52 P.3d 1158 ("[A]n appellate court may affirm . . . on any legal ground or theory apparent on the record." (emphasis and internal quotation marks omitted)).

¶14 In *RM Lifestyles, LLC v. Ellison*, 2011 UT App 290, 263 P.3d 1152, we considered an issue similar to that raised by Reynolds. *See id.* ¶ 16. In that case, the trustor argued that a notice of default filed by an entity who had not yet been named as successor trustee was void, despite the fact that the beneficiary recorded a substitution of trustee, naming the entity as successor trustee before the trustee's sale. *See id.* ¶¶ 3, 11. There, we did not resolve the issue of whether the subsequent ratification of the trustee's actions was effective, instead focusing on the validity of a trustee's deed. A trustee's sale "'once made will not be set aside unless the *interests of the debtor* were sacrificed or there was some attendant fraud or unfair dealing.'" *Id.* ¶ 16 (quoting *Concepts, Inc. v. First Sec. Realty Servs., Inc.*, 743 P.2d 1158, 1160 (Utah 1987) (per curiam)). Because the trustors in *RM Lifestyles* did not allege "that they were denied the right to cure the

default or ever planned on or were capable of curing the default," we declined to set aside the trustee's sale.[7] *See id.* ¶ 18.

¶15    In a nonjudicial foreclosure, the notice of default requirement is intended to "inform persons with an interest in the property of the pending sale of that property, so that they may act to protect those interests." *See Concepts*, 743 P.2d at 1159. Even where irregularity is alleged, "'[t]he remedy of setting aside the sale will be applied only in cases which reach unjust extremes.'" *Timm v. Dewsnup*, 2003 UT 47, ¶ 36, 86 P.3d 699 (quoting *Concepts*, 743 P.2d at 1159); *see also id.* ("'The objective of the notice is to prevent a sacrifice of the property. If that objective is attained, immaterial errors and mistakes will not affect the sufficiency of the notice or the sale made pursuant thereto.'" (quoting *Concepts*, 743 P.2d at 1159)). Absent such exceptional circumstances, the proper remedy is to seek an injunction prior to a sale, which allows a debtor to challenge irregularities and protect her rights before the sale is completed and a trustee's deed is executed and delivered to the purchaser. *See RM Lifestyles*, 2011 UT App 290, ¶ 15 n.4 (citing *Harline v. Campbell*, 728 P.2d 980, 981 (Utah 1986)).

¶16    Requiring, in most cases, that a trustor assert her rights before the trustee's sale is consistent with the statutory right to cure the default, which also must be exercised during the three-month grace period *before* a trustee's sale is held.[8] *See* Utah Code Ann. § 57-1-24 (2010) (providing that the trustee must record a notice of default at least three

---

[7]Despite Reynolds's attempts to distinguish *RM Lifestyles*, it is controlling. While Reynolds is correct that in *RM Lifestyles*, the substitution of trustee was recorded two months before the trustee's sale, Reynolds's claim based on the failure to execute and record a substitution of trustee until after the sale is based on the same argument that the beneficiary could not ratify the purported trustee's actions after the fact. *See RM Lifestyles LLC v. Ellison*, 2011 UT App 290, ¶¶ 3, 15, 263 P.3d 1152; Utah Code Ann. § 57-1-22(3)(a) (2010).

[8]We note that Reynolds has not alleged any violation of the Utah Code's notice provisions or any prejudice resulting therefrom. *See* Utah Code Ann. §§ 57-1-24 to -26 (2010). While Reynolds's amended complaint alleges that she did not receive actual notice of the default until one month before the trustee's sale, it acknowledges that the notice of default was recorded four months before the notice of sale was posted on the Property.

months before giving notice of sale); *id.* § 57-1-31 (allowing the trustor to "cure the existing default" within three months of the notice of default); *RJW Media, Inc. v. CIT Grp./Consumer Fin., Inc.*, 2008 UT App 476, ¶ 28, 202 P.3d 291 (stating that "'[t]he purpose and effect of the notice of default provisions'" is that "'the obligation for which the trust property was conveyed as security may be reinstated'" before the trustee's sale (quoting *McCarthy v. Lewis*, 615 P.2d 1256, 1259 (Utah 1980))). The requirement that the trustor raise any issues prior to sale is consistent with the importance of protecting the validity of trustee's deeds, thus promoting bidding at trustee's sales and improving the chances that a sale will be for fair market value.[9] Thus, to have stated a claim upon which relief can be granted, Reynolds must have asserted that she suffered prejudice as a result of the failure to file a substitution of trustee until after the trustee's sale.

¶17    We look to the allegations in the amended complaint to determine whether Reynolds has alleged that the late substitution of trustee sacrificed her rights or whether there was fraud or unfair dealing involved in the sale. *See, e.g., Maese v. Davis Cnty.*, 2012 UT App 48, ¶ 3, 273 P.3d 949 ("[A] rule 12(b)(6) motion to dismiss admits the facts alleged in the [complaint] but challenges the [plaintiff's] right to relief based on those facts." (internal quotation marks omitted)). The amended complaint alleges that because her promissory note had been sold, Reynolds "could not have discovered, without the assistance of [the defendants], the identities of any actual holders of the Notes." The complaint further alleges Reynolds's belief that her mortgage notes may have become unsecured through improper transfer, making foreclosure illegal.

¶18    However, Reynolds does not allege that she tried unsuccessfully to identify the current beneficiaries or that she was "denied the right to cure the default or ever planned on or [was] capable of curing the default." *See RM Lifestyles*, 2011 UT App 290, ¶ 18. Nor does Reynolds allege that she sought an injunction to allow her to challenge the alleged inadequacy of notice "before the sale was completed and a trustee's deed was executed." *See id.* ¶ 15 n.4. Indeed, Reynolds has not alleged that the failure of Citibank to execute and record a substitution of trustee until after the trustee's

---

[9]A deficiency judgment after a trustee's sale is limited by statute to the difference between the deficiency and fair market value "as encumbered by any senior encumbrances as of the date of sale," which is determined by the court. *See Capital Assets Fin. Servs. v. Jordanelle Dev., LLC*, 2010 UT App 385, ¶ 11, 247 P.3d 411 (construing Utah Code Ann. § 57-1-32 (2010)).

sale sacrificed her interests or constitutes "fraud or unfair dealing." *See id.* ¶ 16.  Nor does she contend that the subsequent ratification of Woodall's actions had the "effect of chilling the bidding and causing an inadequacy of price." *See Timm*, 2003 UT 47, ¶ 37 (internal quotation marks omitted).  Under these circumstances, we agree with the trial court that Reynolds's complaint fails to state a claim upon which relief could be granted, albeit on different grounds than those ruled on by the trial court.  Accordingly, we affirm the trial court's dismissal of the claims against Woodall.[10]

¶19    Affirmed.

_____
Carolyn B. McHugh,
Presiding Judge

-----

¶20    WE CONCUR:

_____
William A. Thorne Jr., Judge

_____
Stephen L. Roth, Judge

_____

[10]Although Reynolds also challenges the dismissal of U.S. Bank and the summary judgment entered in favor of the Kemker Trust, on appeal, she does not identify or brief any issues related to those orders.  Because there is no substantial issue for review, we summarily affirm the trial court's dismissal of the claims against U.S. Bank and the summary judgment in favor of the Kemker Trust. *See Larsen v. Wright*, 2012 UT App 9, ¶ 1, 268 P.3d 890 (per curiam) (summarily affirming the trial court's order where the appellant "failed to identify a substantial question for review warranting further consideration" (citing Utah R. App. P. 10)).  For the same reason, we summarily affirm the dismissal of Citibank because Reynolds does not claim that she served Citibank with the complaint thereby making it a party to this action. *See id.*