*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2017 UT 2**

IN THE

SUPREME COURT OF THE STATE OF UTAH

BANK OF AMERICA,
*Appellant,*

*v.*

SAMUEL D. ADAMSON and
COURTNEY D. ADAMSON,
*Appellees.*

No. 20140861
Filed January 11, 2017

On Direct Appeal

Fifth District, St. George Dep't
The Honorable Jeffrey C. Wilcox
No. 14050067

Attorneys:

Robert H. Scott, Salt Lake City, UT, Amy Miller, Washington D.C.,
Brian E. Pumphrey, Richmond, VA, for appellant

John Christian Barlow, St. George, UT, for appellees

JUSTICE DURHAM authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUDGE LAWRENCE joined.

Having been recused, JUSTICE PEARCE does not participate herein;
DISTRICT JUDGE BARRY G. LAWRENCE sat.

JUSTICE DURHAM, opinion of the Court:

**INTRODUCTION**

¶1    This case involves a nonjudicial foreclosure sale conducted
in violation of Utah Code section 57-1-21, which requires the trustee
of the sale to maintain a physical office location within the state.
Today we answer the question left open in *Federal National Mortgage
Association v. Sundquist*, 2013 UT 45, 311 P.3d 1004, as to the
appropriate remedy for this violation. Because we conclude, under

the circumstances of this case, that the violation did not result in a void or voidable trustee's deed, we hold that the district court erred in dismissing the unlawful detainer action in favor of the Adamsons. We thus reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶2   Samuel D. Adamson refinanced his home in 2007 through a deed of trust.[1] Mr. Adamson defaulted on the loan in December 2008. Bank of America appointed ReconTrust as the successor trustee, which then executed and recorded a notice of default and election to sell on June 25, 2009. The notice included a phone number to reach ReconTrust with any questions.

¶3   Although Mr. Adamson had notice of the default and upcoming trustee sale date, he never contacted ReconTrust before the scheduled sale date, and did not attend the sale.[2] Neither did Mr. Adamson seek an injunction or file a lawsuit prior to the sale. On January 14, 2010, ReconTrust sold the property in a nonjudicial foreclosure sale to BAC Home Loans Services, LP. BAC Home Loans Services eventually merged with Bank of America, which then sold the property to Distressed Asset on December 18, 2013. Mr. Adamson and his wife, Courtney D. Adamson, have lived continuously on the property since the sale, and have not made a loan payment or paid property taxes since December 2008.

¶4   In 2014, Distressed Asset filed an unlawful detainer action against the Adamsons. At trial, the Adamsons argued that the trustee's sale was defective because ReconTrust did not meet the qualifications to serve as trustee under Utah Code section 57-1-21, which required ReconTrust to maintain a physical office location in Utah. *Id.* § 57-1-21(1)(a). The Adamsons argued that this defect rendered the sale void.

¶5   The district court noted that in *Federal National Mortgage Association v. Sundquist*, 2013 UT 45, ¶ 13, 311 P.3d 1004, we held that "ReconTrust is neither a member of the Utah State Bar nor a title insurance company or agency with an office in the State of Utah. ReconTrust was therefore not a qualified trustee with the power of sale under Utah Code sections 57-1-21 and 57-1-23." However, the

---

[1] Mr. Adamson originally refinanced through Guild Mortgage, which sold the debt to Countrywide Home Loan Servicing LP, which in turn sold to Bank of America.

[2] Mr. Adamson was in contact with Bank of America at the time, trying to get a loan modification.

district court also noted that "the *Sundquist* court expressly declined to decide what effect, if any, its determination that ReconTrust did not qualify as a trustee with the power of sale would have on the validity of the sale and resulting trust deed." *See id.* ¶ 50.

¶6     Although the district court found that Distressed Asset had made out "a prima facie case for unlawful detainer," it concluded that the failure to satisfy Utah Code section 57-1-21 rendered the trustee sale void *ab initio*, and dismissed the unlawful detainer action. Distressed Asset appealed. We transferred the case to the court of appeals. Distressed Asset then assigned its rights, title, and interest in the property to Bank of America. After oral argument in the court of appeals, but before that court issued an opinion, we vacated our transfer order and recalled the case. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶7     "We review questions of statutory interpretation for correctness, affording no deference to the district court's legal conclusions." *Salt Lake City Corp. v. Evans Dev. Grp., LLC*, 2016 UT 15, ¶ 9, 369 P.3d 1263 (citation omitted).

## ANALYSIS

¶8     Bank of America advances two main arguments on appeal: first, that we should overturn our decision in *Federal National Mortgage Association v. Sundquist*, 2013 UT 45, 311 P.3d 1004, and hold that the National Bank Act "preempts Utah law regarding a national bank's authority to exercise the power of sale;" and second—even if we do not overturn *Sundquist*—that the district court erred in finding the trustee sale void. We hold that Bank of America has failed to meet its burden of persuasion on its first argument because it was inadequately briefed, but we conclude the district court erred in finding the trustee sale void and in dismissing the unlawful detainer action.

## I. WE DECLINE TO OVERRULE *SUNDQUIST*, AS BANK OF AMERICA HAS NOT ADEQUATELY BRIEFED THIS ARGUMENT

¶9     *Stare decisis* is "a cornerstone of Anglo-American jurisprudence." *State v. Guard*, 2015 UT 96, ¶ 33, 371 P.3d 1 (citation omitted). Therefore, "[t]hose asking us to overturn prior precedent have a substantial burden of persuasion." *State v. Menzies*, 889 P.2d 393, 398 (Utah 1994). In order to meet this burden, "we must be 'clearly convinced that' prior caselaw 'was originally erroneous or is no longer sound because of changing conditions.'" *Scott v. Universal Sales, Inc.*, 2015 UT 64, ¶ 23, 356 P.3d 1172 (citation omitted).

¶10 Bank of America does not mention this standard, nor does it offer any arguments to explain why our decision was either originally erroneous or no longer sound. Bank of America asserts that "*Sundquist* was wrongly decided and should be overruled." But the only authority it cites as "significant legal developments" in support of its assertion is an unpublished Tenth Circuit opinion[3] and two *amici curiae* briefs from other cases. *See Garrett v. ReconTrust Co.*, 546 F. App'x 736 (10th Cir. 2013) (unpublished opinion); Office of the Comptroller of the Currency's Amicus Brief, *Dutcher v. Matheson*, No. 12-4150 (10th Cir. July 15, 2013); U.S. Solicitor General's Amicus Brief, *Fed. Nat'l Mortg. Ass'n v. Sundquist*, No. 13-852 (U.S. Oct. 7, 2014). Bank of America devotes fewer than two pages of its brief to this issue and does not develop any reasoned argument for overturning our very recent precedent.

¶11 Utah Rule of Appellate Procedure 24(a)(9) requires an appellant's brief to "contain the contentions and reasons of the appellant with respect to the issues presented . . . with citations to the authorities, statutes, and parts of the record relied on." We have clarified this requirement by stating that "[a]n issue is inadequately briefed if the argument 'merely contains bald citations to authority [without] development of that authority and reasoned analysis based on that authority.'" *State v. Timmerman*, 2009 UT 58, ¶ 25 n.5, 218 P.3d 590 (second alteration in original) (citation omitted). We have, at times, stated that inadequate briefing is an absolute bar to review of an argument on appeal. *See Johnson v. Johnson*, 2014 UT 21, ¶ 20, 330 P.3d 704 ("We have repeatedly warned that [appellate courts] will not address arguments that are not adequately briefed, and that we are not a depository in which the appealing party may dump the

---

[3] We note that the Tenth Circuit opinion is not persuasive authority on whether to overrule *Sundquist*, as the reasonableness of the agency regulation was not contested before that court. *See Garrett v. ReconTrust Co.*, 546 F. App'x 736, 739 (10th Cir. 2013) (unpublished opinion) ("Importantly, Garrett raises arguments only as to the *meaning* of Rule 9.7, and not to the *reasonableness* of the regulations themselves; thus, we limit our inquiry accordingly." (citation omitted)). Because no one in *Garrett* argued that the agency's regulation was unreasonable, the court did not go through the *Chevron* analysis to determine whether to apply the regulation. Thus, Bank of America represented this case as one that would compel the conclusion that we wrongly decided *Sundquist*, when in fact it does not even address the determinative issue in *Sundquist* (i.e. whether to apply the regulation). *Fed. Nat'l Mortg. Ass'n v. Sundquist*, 2013 UT 45, 311 P.3d 1004.

burden of argument and research." (alteration in original) (citation omitted)). However, we recognize that there is a spectrum of how adequately an argument may be briefed. On one end, an issue may be argued in only one sentence without any citations to legal authority or to the record. On the other, there may be dozens of pages of argument including volumes of authority and citations to the record regarding a single issue. Defining the exact point at which a brief becomes adequate is not possible, nor is it advisable, as each issue is different and may require different amounts of analysis and argument.

¶12   We clarify that there is not a bright-line rule determining when a brief is inadequate. Rather, an appellant who fails to adequately brief an issue "will almost certainly fail to carry its burden of persuasion on appeal." *State v. Nielsen*, 2014 UT 10, ¶ 42, 326 P.3d 645. "Accordingly, from here on our analysis will be focused on the ultimate question of whether the appellant has established a [sufficient argument for ruling in its favor]—and not on whether there is a technical deficiency in [briefing] meriting a default." *Id.* ¶ 41.

¶13   While we make this clarification, we emphasize the importance of a party's thoughtful analysis of prior precedent and its application to the record. An appellant that fails to devote adequate attention to an issue is almost certainly going to fail to meet its burden of persuasion. A party must cite the legal authority on which its argument is based and then provide reasoned analysis of how that authority should apply in the particular case, including citations to the record where appropriate. Under this standard, we hold that Bank of America has failed to meet its burden of persuading us that we should overrule *Sundquist*.

## II. VOIDING THE TRUSTEE SALE IS AN IMPROPER REMEDY

¶14 Because Bank of America failed to meet its burden of persuasion in its request to overturn *Sundquist*, we must still determine the remedy for failure to comply with Utah Code section 57-1-21. In order to exercise the power of sale in a nonjudicial foreclosure, Utah law requires a trustee to be "qualified." UTAH CODE § 57-1-23. A qualified trustee is defined as

> (i) any active member of the Utah State Bar who maintains a place within the state where the trustor or other interested parties may meet with the trustee . . . ; [or]
>
> . . .

(iv) any title insurance company or agency that: (A) holds a certificate of authority or license . . . to conduct insurance business in the state; (B) is actually doing business in the state; and (C) maintains a bona fide office in the state.

*Id.* § 57-1-21(1)(a). As we held in *Sundquist*, "ReconTrust is neither a member of the Utah State Bar nor a title insurance company or agency with an office in the State of Utah. ReconTrust was therefore not a qualified trustee with the power of sale under Utah Code sections 57-1-21 and 57-1-23." *Fed. Nat'l Mortg. Ass'n v. Sundquist*, 2013 UT 45 ¶ 13, 311 P.3d 1004. However, we did not decide in *Sundquist*—or any other case—what effect, if any, the violation of section 57-1-21 would have on the trustee sale and resulting trustee's deed. *See id.* ¶ 50 ("Our opinion in this matter is limited to the narrow issue of whether Utah law regarding the qualification of trustees is preempted by the N[ational] B[anking] A[ct].").

¶15 We begin by noting that at the time of the sale, the Trust Deed Act (Utah Code sections 57-1-19 through 57-1-36) did not provide a statutory remedy for violations of section 57-1-21.[4] However, even without the explicit statutory remedy, the Trust Deed Act lays out the requirements for the foreclosure of a trust deed, and we have previously discussed when the failure of other requirements may result in a voidable trustee's deed. *See Concepts, Inc. v. First Sec. Realty Servs., Inc.*, 743 P.2d 1158, 1160 (Utah 1987) (laying out test for when a trustee's deed may be set aside for deficient notice of sale). We follow our prior precedent detailing when a trustee's deed may be set aside for Utah Code section 57-1-21. We first articulate the Trust Deed Act's focus on trustor protections prior to the trustee sale, and detail some of the protections the statutory scheme has in place to protect the rights of trustors to challenge the foreclosure prior to the sale. Second, we outline the high burden trustors face in challenging foreclosure proceedings after the trustee sale has taken place, and clarify the differences between void, voidable, and valid deeds. Finally, we hold that the trustee's deed in this case is valid.

---

[4] In 2011, the Utah legislature adopted Utah Code section 57-1-23.5, which provides that "a person who does not qualify as a trustee under Subsection 57-1-21(1)(a)(i) or (iv) . . . [and] conducts an unauthorized sale is liable to the trustor for the actual damages suffered by the trustor as a result of the unauthorized sale or $2,000, whichever is greater."

### A. Before the Sale: Notice of Default and Statutory Right to Cure the Default

¶16 In most cases, Utah law requires "that a trustor assert her rights before the trustee's sale." *Reynolds v. Woodall*, 2012 UT App 206, ¶ 16, 285 P.3d 7. This "is consistent with the statutory right to cure the default, which also must be exercised during the three-month grace period *before* a trustee's sale is held." *Id.* (citing Utah Code section 57-1-24's requirement that a trustee record notice of default at least three months before giving notice of sale, and section 57-1-31's requirement that the trustor cure the default within three months of the notice of default). Indeed, a trustor "may by acquiescence and failure to assert his rights at the proper time be estopped to set up irregularities in the foreclosure proceedings to defeat rights of the purchaser." *Am. Falls Canal Sec. Co. v. Am. Sav. & Loan Ass'n*, 775 P.2d 412, 414 (Utah 1989) (citation omitted).

¶17 This is so because, "[w]hen . . . title to real property is at issue, the need for finality is at its apex." *Am. Estate Mgmt. Corp. v. Int'l Inv. & Dev. Corp.*, 1999 UT App 232, ¶ 10, 986 P.2d 765. Utah law presumes that "a trustee's deed, which states that it complies with the statutory requirements, is 'conclusive evidence in favor of bona fide purchasers' of the trustee's deed's validity." *RM Lifestyles, LLC v. Ellison*, 2011 UT App 290, ¶ 17 n.5, 263 P.3d 1152 (quoting Utah Code Annotated section 57-1-28(2)(c)(ii)). *See also Blodgett v. Martsch*, 590 P.2d 298, 303 (Utah 1978) ("Our statutes protect a bona fide purchaser at a public sale under a trust deed, by permitting him to rely on the recitals in the deed he receives from the trustee after the sale."); *Reynolds*, 2012 UT App 206, ¶ 15 ("Absent . . . exceptional circumstances, the proper remedy is to seek an injunction prior to a sale, which allows a debtor to challenge irregularities and protect her rights before the sale is completed and a trustee's deed is executed and delivered to the purchaser.").

¶18 Utah Code section 57-1-21 lays out the requirements for a person to qualify as a trustee and was presumably designed to make it "easier for Utahns to meet with trustees" and ask questions about the notice of default, curing the default, or any other issues that may arise prior to the sale. *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1048 (10th Cir. 2009). However, the time when a trustor needs to contact the trustee with these questions is *before* the foreclosure sale, not after. Raising any issues with the foreclosure process prior to the sale furthers the policy of "protecting the validity of trustee's deeds, thus promoting bidding at trustee's sales and improving the chances that a sale will be for fair market value." *Reynolds*, 2012 UT App 206, ¶¶ 16, 18 (refusing to set aside a trustee sale in part because the trustor did not seek "an injunction to allow her to challenge the

alleged inadequacy of notice 'before the sale was completed and a trustee's deed was executed.'" (citation omitted)). Failing to challenge a trustee sale prior to the sale does not foreclose relief, but the trustor faces a much higher burden once the sale has taken place.

### *B. Trustor's Remedy After the Sale*

¶19  In this case, the Adamsons attempt to set aside a trustee sale after it has been completed. The district court, looking to a treatise on real estate law, concluded that there are three categories of trustee's deeds: void, voidable, and valid. The district court determined that, because the trustee did not meet all of the statutory requirements and was thereby not a qualified trustee, the trustee's deed was void. We clarify the distinction between these categories in Utah.

¶20  Once a trustee sale is completed, "[t]he remedy of setting aside the sale will be applied only in cases which reach unjust extremes." *Concepts*, 743 P.2d at 1159. We have previously held that there are three categories of deeds: void, voidable, and valid. If a deed is declared void, it "cannot be ratified or accepted, and anyone can attack its validity in court." *Ockey v. Lehmer*, 2008 UT 37, ¶ 18, 189 P.3d 51 (citations omitted). A void deed "carries no title on which a bona fide purchaser may rely, whereas a [voidable deed] may be the basis of good title in the hands of a bona fide purchaser who gave value prior to the time the deed was avoided by the grantor." *Bennion Ins. Co. v. 1st OK Corp.*, 571 P.2d 1339, 1341 (Utah 1977). A voidable deed "is valid against the world, . . . because only the injured party has standing to ask the court to set it aside." *Ockey*, 2008 UT 37, ¶ 18 (citations omitted). A deed is valid and not void or voidable if it results from only inconsequential errors that do not affect the validity of the sale.

¶21  This court has recognized only one kind of deed as void *ab initio*; i.e., a deed that violates public policy. *Id*. ¶¶ 18–20 ("Only [deeds] that offend public policy or harm the public are void ab initio." (citation omitted)). In *Ockey*, we analyzed whether a deed was void, as opposed to voidable, by looking at two factors: 1) legislative statements of public policy, and 2) whether the conveyance "harmed the public as a whole." *Id*. ¶¶ 19, 23–24 (Deeds "that offend an individual, such as those arising from fraud, misrepresentation, or mistake, are voidable."). In that case, a trustee conveyed real property from a trust when that trustee lacked the authority to do so. *Id*. ¶ 17. We held that even though such an action was *ultra vires*, the deed was only voidable, not void *ab initio*. *Id*. ¶ 24.

¶22  If a deed is not void *ab initio*, our holding in *Concepts* sets forth the method for attacking a trustee's deed as voidable. We held in *Concepts* that "[a] sale once made will not be set aside unless the

*interests of the debtor* were sacrificed or there was some attendant fraud or unfair dealing." 743 P.2d at 1160; *cf. Gregorakos v. Wells Fargo Nat'l Ass'n*, 647 S.E.2d 289, 292 (Ga. Ct. App. 2007) ("[A] plaintiff asserting a claim of wrongful foreclosure [must] establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." (second alteration in original) (citation omitted)).

¶23 Unless there is evidence of fraud or other unfair dealing, the trustor is required to show he suffered prejudice from some defect in the sale in order to state a claim for relief. *See Reynolds*, 2012 UT App 206, ¶ 16 ("[T]o . . . state[] a claim upon which relief can be granted, [trustor] must have asserted that she suffered prejudice as a result of the failure to file a substitution of trustee until after the trustee's sale."); *RM Lifestyles*, 2011 UT App 290, ¶ 18 ("[Trustors] did not produce any evidence that the alleged irregularity resulted in their receiving defective notice of the sale or in any other way affected their ability to protect their rights."); *Occidental/Nebraska Fed. Sav. Bank v. Mehr*, 791 P.2d 217, 221 (Utah Ct. App. 1990) ("[Trustee] failed to comply strictly with the procedural requirements that should precede a trustee's sale. However, the steps taken afforded all parties the rights and protections the statutory requirements for a nonjudicial foreclosure were intended to ensure."); *accord Amresco Indep. Funding, Inc. v. SPS Props., LLC*, 119 P.3d 884, 886–87 (Wash. Ct. App. 2005) ("Despite the strict compliance requirement, a plaintiff must show prejudice before a court will set aside a trustee sale.").

¶24 A trustor must prove prejudice when the trustor alleges some failure of the trustee to strictly comply with the statutory requirements of the Trust Deed Act, or some other deficiency in the sale. *See, e.g., Timm v. Dewsnup*, 2003 UT 47, ¶¶ 34–37, 86 P.3d 699 (holding failure to strictly comply with notice requirements not sufficient to set aside trustee's deed without showing of prejudice); *Concepts*, 743 P.2d at 1161 (holding that typographical error in the statutory notice of sale did not prejudice the trustor). Prejudice alone is not enough; the trustor must also establish a causal connection between the defect and the prejudice. *See Timm*, 2003 UT 47, ¶ 37 ("Whatever irregularities [the trustor] may allege in the technicalities of the notice requirement, they are immaterial if she does not demonstrate that she was unable to protect her interests, or if there were a resulting 'effect of chilling the bidding and causing an inadequacy of price.'"); *Pierucci v. U.S. Bank, NA*, 2015 UT App 80, ¶ 14, 347 P.3d 837 ("It is insufficient for the [the trustors] to allege that their interests in the property were affected; rather, they must

allege that an irregularity in the sale—such as deficient notice or fraud in connection with the sale—prevented them from protecting their interest in the property."); *Jones v. Johnson*, 761 P.2d 37, 41 n.2 (Utah Ct. App. 1988) ("'[S]ubstantial inadequacy of price, coupled with fraud, mistake, or other unfair dealing' can be the basis for setting aside a foreclosure sale." (citations omitted)); *accord Gilroy v. Ryberg*, 667 N.W.2d 544, 555 (Neb. 2003) ("[T]o establish a defect that renders the trustee's sale voidable, the party seeking to set aside the sale must show not only the defect, but also that the defect caused the party prejudice. If the party did not suffer any harm from the alleged defect, there is no justification for imposing the additional costs associated with setting aside the sale."); 55 AM. JUR. 2D, *Mortgages* § 565 ("To establish a defect that renders the trustee's sale under a trust deed voidable, the party seeking to set aside the sale must show not only the defect, but also that the defect caused the party prejudice."). If the defect does not cause prejudice, then the error is considered inconsequential and the trustee's deed is valid.

¶25 If the trustor does not make any challenges prior to completion of the sale, but the deed is still voidable because of fraud or prejudice connected to the sale defect, the sale will be set aside only if the title has not yet passed into the hands of a bona fide purchaser.[5] This is because "[o]ur statutes protect a bona fide purchaser at a public sale under a trust deed, by permitting him to rely on the recitals in the deed he receives from the trustee after the sale." *Blodgett*, 590 P.2d at 303. Utah Code section 57-1-28(2)(c) provides that the trustee's deed recitals "constitute prima facie evidence of compliance with [the Trust Deed Act] and . . . are conclusive evidence in favor of bona fide purchasers and encumbrancers for value and without notice."

¶26 Therefore, once a bona fide purchaser has acquired the property, the only remedy left to a trustor under a voidable deed is damages from the party causing the injury. *See Blodgett*, 590 P.2d at 303–04 (holding that the sale could be set aside if the property had not been sold to a bona fide purchaser; otherwise the trustor could receive unjust enrichment damages); *accord Swindell v. Overton*, 314 S.E.2d 512, 517 (N.C. 1984) ("[W]here the defect in a foreclosure sale renders the sale voidable, as in the case at bar, the [trustor's] right of redemption can be cut off if the land is bought by a bona fide

---

[5] Because we conclude that the defect in this case—failure to comply with Utah Code section 57-1-21—did not prejudice the Adamsons and therefore the trustee's deed is valid, we do not address the bona fide purchaser status of BAC Home Loans Servicing and subsequent purchasers of the property.

purchaser for value without notice. In such instances, a plaintiff is left with an action for damages against the trustee as his only remedy."); *Peterson v. Kansas City Life Ins. Co.*, 98 S.W.2d 770, 775 (Mo. 1936) ("[A] suit for damages at law is an especially appropriate remedy where an innocent purchaser buys at foreclosure, because it gives relief against the guilty rather than the innocent party."); GRANT NELSON ET AL., REAL ESTATE FINANCE LAW § 7:21 (6th ed. 2014) ("If the defect only renders the sale voidable, the redemption rights can be cut off if a bona fide purchaser for value acquires the land. When this occurs, an action for damages against the foreclosing mortgagee or trustee may be the only remaining remedy.").

### C. The District Court Erred in Dismissing the Unlawful Detainer Action

¶27 Although the district court found that Distressed Asset had made a prima facie case for unlawful detainer, it concluded ReconTrust's failure to satisfy Utah Code section 57-1-21 rendered the trustee sale void, and dismissed the unlawful detainer action. The district court noted our precedent from *Concepts* that "[a] sale once made will not be set aside unless the *interests of the debtor* were sacrificed or there was some attendant fraud or unfair dealing," 743 P.2d at 1160, but it found precedent from a Utah Territory case from 1880 and a court of appeals case to be more persuasive.

¶28 In *Singer Manufacturing Co. v. Chalmers*, 2 Utah 542 (Utah Terr. 1880), the deed of trust required a United States Marshal to act as trustee and perform the sale. *Id.* at 546–47. At the trustee sale, the Marshal was not present and instead one of his deputies auctioned off the property. The deputy was not appointed nor authorized to act as trustee. The territorial court held

> The fact that no injury or fraud in the sale has been shown, does not affect the question. Nor is it affected by the fact that the purchaser was an innocent party. The sale was made by one not authorized to make it, and cannot be upheld. It is simply void, and no one gains any rights under it.

*Id.* at 547.

¶29 *Singer* was issued by the territorial court long before the Trust Deed Act was passed and even before Utah became a state. While it is persuasive authority, it is not binding as we are applying the Trust Deed Act in this case. The district court erred in applying this case to supersede our analysis in *Concepts*.

¶30 Additionally, *Singer* is distinguishable from the present case. In *Singer*, the marshal, as trustee of the trust deed, held legal title to

the property, but he did not sell it; instead, a person without a legal relationship to the parties or the property completed the sale. Here, Bank of America correctly argues that ReconTrust "was duly appointed by the beneficiary under the deed of trust to act as successor trustee," and as such it "held legal title to the property by virtue of its status as trustee." *See* UTAH CODE § 57-1-19(4) (A "trustee" is defined in the Trust Deed Act as "a person to whom title to real property is conveyed by trust deed, or his successor in interest."). Aside from not meeting the local office requirement of Utah Code section 57-1-21, ReconTrust satisfied all other requirements of the Trust Deed Act and qualifies under the National Bank Act as a trustee. ReconTrust owed legal duties to both Mr. Adamson as trustor and the bank as beneficiary, and was required to provide proper notice of default and to allow the Adamsons the chance to redeem before the sale, all of which it did. *See* UTAH CODE §§ 57-1-24 and 57-1-31.

¶31 The case of *McQueen v. Jordan Pines Townhomes Owners Association, Inc.*, 2013 UT App 53, 298 P.3d 666, is similarly inapplicable to the present case. In *McQueen*, a condominium association foreclosed on a condominium owner because of unpaid association fees. *Id.* ¶¶ 2-3. The Condominium Ownership Act incorporated the Trust Deed Act's requirements for nonjudicial foreclosures of assessment liens. *See id.* ¶ 17. The court of appeals held that the association was therefore required to "appoint a qualified trustee to conduct the sale or foreclosure of a condominium owner's interest in the unit." *Id.* The association failed to strictly comply with the Trust Deed Act's requirement to formally appoint a trustee by filing a substitution of trustee in the county recorder's office. It simply had its attorney conduct the foreclosure process and sale. However, the association "act[ed] through its attorney," i*d.* ¶ 3, whom the association argued was "legally authorized to act on its behalf and conduct the foreclosure sale," *id.* ¶ 19.

¶32 Despite noting that the Trust Deed Act's requirement for the formal appointment of a qualified trustee is a procedural requirement similar to the requirement for "proper notice," the court of appeals did not conduct any of the analysis required under *Concepts*. *Id.* ¶ 11. It simply determined that the foreclosure was not conducted in strict compliance with the Trust Deed Act because the sale was not conducted by a qualified trustee, and that the trustee's deed was therefore invalid. *Id.* ¶¶ 19–21. This holding was based on its analysis that "[t]he purpose of requiring the appointment of a qualified trustee is to provide an independent third party who can objectively execute a foreclosure or sale in the absence of judicial oversight." *Id.* ¶ 21. The court reasoned that the "underlying

rationale behind the trustee requirement thus strengthens our conclusion that a party must appoint a qualified trustee in order to enforce an assessment lien without judicial intervention." *Id.* However, we note that while a trustee certainly owes duties to both the beneficiary and the trustor, nothing in the Trust Deed Act requires the trustee to be an independent third party. In fact, the Trust Deed Act implies just the opposite. Utah Code section 57-1-21(2) states that "[t]he trustee of a trust deed may not be the beneficiary of the trust deed, *unless the beneficiary is qualified to be a trustee* under Subsection (1)(a)(ii), (iii), (v), or (vi)." (emphasis added). Thus, it appears as though the legislature was more concerned that the trustee be able to competently fulfill the responsibilities of a trustee under the Trust Deed Act, than with the trustee's status as an independent third party.[6]

¶33 Additionally, in *McQueen*, the attorney seems to have had actual authority to conduct the sale. This appears to have been an informal appointment of the attorney as trustee, even if it did not strictly comply with the Trust Deed Act's requirement that the appointment be filed in the county recorder's office. *See* UTAH CODE § 57-1-22(1)(a) ("The beneficiary may appoint a successor trustee at

---

[6] This is further supported by the fact that the Trust Deed Act authorizes the beneficiary under a trust deed to appoint or substitute a trustee at any time and that a trustee may be an attorney licensed in the state of Utah with an office in this state. UTAH CODE § 57-1-21(1)(a)(i) & -22(1). Nothing in the Trust Deed Act prevents an association from appointing its own attorney as the trustee to conduct the foreclosure. *McQueen*'s holding is further undermined by Utah Code section 57-1-22(1)(c), which allows a beneficiary to "ratify and confirm an action taken on the beneficiary's behalf by the new trustee prior to the recording of the substitution of trustee." This confirms our prior precedent concerning void and voidable deeds. "A contract or a deed that is void cannot be ratified or accepted . . . . In contrast, a contract or deed that is voidable may be ratified at the election of the injured party." *Ockey v. Lehmer*, 2008 UT 37, ¶ 18, 189 P.3d 51.

We acknowledge that there is some concern that a trustee may not adequately protect the interests of the trustor. However, the beneficiary's and the trustor's interests are often aligned— both want the highest price at the sale. In those instances where they are not aligned, the trustee must still avoid fraud and unfair dealing that "would have the effect of chilling the bidding and causing an inadequacy of price." *Concepts, Inc. v. First Sec. Realty Servs., Inc.*, 743 P.2d 1158, 1159 (Utah 1987).

any time by filing an appointment of trustee or a substitution of trustee for record in the office of the county recorder . . . ."); *id.* § 57-1-22(1)(c) ("The beneficiary may, by express provision in the appointment of trustee or substitution of trustee, ratify and confirm an action taken on the beneficiary's behalf by the new trustee prior to the recording of the substitution of trustee."). Thus, the proper question in *McQueen* was whether the trustor was prejudiced by the beneficiary's failure to strictly comply with the Trust Deed Act. To set aside a trustee's deed, a court must determine whether the trustee's deed was void as against public policy, or voidable because of fraud, unfair dealing, or that the trustor suffered prejudice due to some defect in the sale, such as the trustee's failure to strictly comply with the Trust Deed Act. We overrule *McQueen* to the extent that it implies otherwise. The court of appeals' analysis of the remedy for lack of a qualified trustee has no bearing on this case.

¶34 In the present case, the Adamsons do not present any arguments as to how the trustee's deed violated public policy. We therefore hold that the district court erred in declaring the trustee sale void. We must still determine, however, whether the deed is voidable or valid. For the deed to be voidable, the trustor must show evidence of fraud or other unfair dealing, or that a defect prejudiced the trustor. Fraud or unfair dealing were never alleged in this case, so we limit our inquiry to whether Mr. Adamson suffered prejudice from ReconTrust's failure to comply with Utah Code section 57-1-21.

¶35 ReconTrust was properly appointed by the beneficiary as successor trustee and held legal title to the property. The only issue is whether ReconTrust's failure to maintain an office in the state of Utah prejudiced the Adamsons. The record reflects that Mr. Adamson did not suffer prejudice caused by ReconTrust's status as an out-of-state trustee and therefore does not qualify for damages and cannot move to set aside the sale. Mr. Adamson claims that "because [neither] ReconTrust nor Bank of America has an office in the State of Utah, Mr. Adamson paid Fortified Financial the sum of $3,700.00 to make contact with Bank of America and assist the Adamsons with negotiations for a loan modification."

¶36 But this assertion does not explain why ReconTrust's status as out-of-state trustee led to Mr. Adamson's actions or prejudiced him. His negotiations with Bank of America to obtain a loan modification are irrelevant to the question of whether ReconTrust's failure to comply with section 57-1-21 prejudiced Mr. Adamson's rights in the foreclosure process. The record reflects that although ReconTrust properly sent Mr. Adamson notice of the foreclosure and the sale date, and Mr. Adamson had ReconTrust's phone number on the notice of default, he never attempted to contact ReconTrust

before the scheduled sale date, and did not attend the sale. Additionally, Mr. Adamson did not seek an injunction or file a lawsuit prior to the sale. It was not until after the sale that Mr. Adamson contacted ReconTrust by telephone. In order to show prejudice, Mr. Adamson would have to show that he would have gone to a brick-and-mortar office in Utah if such an office were available, and that this would have changed the outcome of the sale. There is no evidence in the record that Mr. Adamson would have gone in person to ReconTrust's office, especially in light of the fact that although ReconTrust's phone number was included on the notice of default, Mr. Adamson did not even attempt to contact ReconTrust until after the sale. And even if he were to personally visit such an office, there is no evidence that this would have changed the outcome of the foreclosure sale, as there is no evidence in the record that Mr. Adamson was capable of curing the default.[7] Therefore, this sale was not voidable and the Adamsons may not seek to set it aside or qualify for damages. The district court erred in dismissing the unlawful detainer action by finding the trustee's deed to be void.

¶37 As a final note, in 2011, after the trustee sale took place, the Utah legislature adopted Utah Code section 57-1-23.5, which provides that "a person who does not qualify as a trustee under Subsection 57-1-21(1)(a)(i) or (iv) . . . [and] conducts an unauthorized sale is liable to the trustor for the actual damages suffered by the trustor as a result of the unauthorized sale or $2,000, whichever is greater." This statutory remedy is not retroactive, however, and is not applicable to the present case.

## CONCLUSION

¶38 Today we clarify the differences between void, voidable, and valid trustee's deeds under Utah law. The trustee sale and resulting trustee's deed at issue in this case are neither void nor voidable. The district court erred in dismissing the unlawful detainer action, and we therefore reverse and remand for further proceedings consistent with this opinion.

––––––––––––––––––

[7] Mr. Adamson was trying to negotiate a loan modification with Bank of America, but Bank of America was not required to accept such a modification after Mr. Adamson received the notice of default. At that point, Mr. Adamson's statutory right of redemption required curing the default.