2018 UT App 14

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ADEL ADNAN ABDUL AZIZ,
Appellant.

Opinion
No. 20150946-CA
Filed January 25, 2018

Third District Court, West Jordan Department
The Honorable Mark S. Kouris
No. 131400411

Rebecca Hyde Skordas and Kaytlin Virginia Beckett,
Attorneys for Appellant

Sean D. Reyes and Kris C. Leonard, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
GREGORY K. ORME and MICHELE M. CHRISTIANSEN concurred.

TOOMEY, Judge:

¶1    Adel Adnan Abdul Aziz appeals from his convictions of aggravated assault with serious bodily injury, a second degree felony, *see* Utah Code Ann. § 76-5-103(3)(a) (LexisNexis Supp. 2017), and intoxication, a class C misdemeanor, *see id.* § 76-9-701(1), (7) (2012). Aziz contends he did not receive a fair trial because of alleged errors in the interpretation of an Arabic-speaking witness's trial testimony. Aziz also contends the district court erred in excluding a portion of his medical expert's testimony. We affirm.

BACKGROUND

¶2     In March 2013, Aziz went to a bar with his friend (Friend). After they began pushing one another, the two men caught the attention of several bar security personnel. Two of these security guards approached the men to speak to them about their scuffle. Aziz responded aggressively: first by making a gun gesture with his hand and placing it against his head and pulling the trigger, and then by pushing one of the security guards (M.C.). The second security guard (Victim) stepped in and attempted to escort Aziz away from the dance floor. But Aziz pulled Victim toward him, and the two began to struggle. As Aziz and Victim struggled, M.C. grabbed Friend and began pulling him toward the exit.

¶3     After Aziz and Victim struggled for a few seconds, Aziz latched onto Victim's cheek with his teeth. When Aziz would not release the bite, Victim became concerned that Aziz "was going to rip off a piece of [his] face." Following the intervention of another security guard (T.S.), Aziz finally released his bite. But the damage was already done. Aziz had bitten off a quarter-sized piece of flesh from Victim's cheek.[1] Victim and T.S. then escorted Aziz outside and held him there until the police arrived.

¶4     When the police arrived, Aziz told a different story. According to Aziz, Victim "came up from behind him" and wrapped his arm around Aziz's neck, so he bit Victim. Although Victim did not deny that he put Aziz in a chokehold, he testified that it did not happen until after Aziz had bitten him. Aziz was later found to have a blood alcohol level of .212.

---

1. The State's medical expert testified that the bite went through Victim's skin and fat and into the muscle. As a result, Victim has undergone several surgeries.

¶5     Friend testified at Aziz's preliminary hearing. Friend told the court that he had brought a friend with him to serve as an interpreter. But because Friend's interpreter was not certified and because Friend appeared to have a good grasp of the English language, the court decided to proceed without the aid of a court interpreter for Friend, unless it became clear that Friend needed one. Except for one question that required clarification, Friend did not have trouble testifying in English. Friend testified that, as Aziz was being escorted outside, he saw two security guards grabbing, pushing, and punching Aziz. Friend did not testify that he saw either the chokehold or the bite and said he did not see Aziz's face near Victim's face.

¶6     At trial, Aziz was assigned a court-appointed Arabic interpreter. Aziz did not testify, but Friend did. Although Friend had little difficulty testifying in English at the preliminary hearing, defense counsel said Friend needed an interpreter during his trial testimony and suggested that Aziz's interpreter provide interpretation. The court was somewhat hesitant about the arrangement, but neither party objected to it.[2] The State did, however, ask Aziz to raise his hand if he had any difficulty hearing the interpretation.

¶7     Friend's trial testimony, through the interpreter, was consistent with his preliminary hearing testimony. On direct examination, Friend testified that security personnel "grabbed" and "captured" Aziz. Defense counsel asked Friend to elaborate on how the security team captured Aziz. Friend explained, through the interpreter, "They took him, . . . they grabbed him by hands and . . . they control[led] him and they took him outside." Friend then testified that he followed them outside and that one of the security guards "captured" and "grabbed" him as

---

2. Although the record is somewhat unclear, it appears that the interpreter was the only court-certified or court-approved Arabic interpreter available.

well. Defense counsel asked Friend, "Did you ever see [Aziz] bite anyone?" Friend's answer, through the interpreter, was unresponsive.[3] Nevertheless, defense counsel did not repeat the question, and the State did not ask about it on cross-examination.

¶8    Aziz's defense rested on the theory that Victim choked Aziz before the bite occurred and that the bite was either in self-defense or that the chokehold put him in a seizure-like state, causing him to bite Victim involuntarily. Friend's testimony was used to demonstrate self-defense. And Aziz called a medical expert (Expert) to testify that the bite could have been involuntary and that the nature of the wound suggested it was defensive. The court allowed Expert to testify about how the bite could have occurred involuntarily, but because Expert was not a forensic dentist, it did not allow him to testify that the nature of Victim's wound suggested a defensive bite.

¶9    After closing arguments, the jury returned guilty verdicts on both charges. One month later, before sentencing, Aziz filed a motion to arrest judgment or, in the alternative, for a new trial on the ground that critical portions of the interpretation of Friend's trial testimony were defective and that an accurate translation would have "given rise to reasonable doubt in the minds of the jury as to the element of intent." To support his claim, Aziz attached a purported corrected interpretation performed by an individual referred to in this opinion as J.A. J.A. did not identify himself as an interpreter—certified or not—

---

3. Friend's response, through the interpreter, was: "When—when I saw the—[Aziz] and the security leaning over him, I came with the other guy, he's grabbing me and then I tried—and he punched me on the face and so—so I fall down on the ground with the guy that he's catching."

or as being fluent in Arabic; he merely stated that he "listened to the [testimony] and translated it to the best of [his] knowledge."[4]

¶10 Although J.A. took issue with several portions of the interpretation of Friend's testimony, only two portions are material. First, when defense counsel asked Friend what he meant by "captured," the court-appointed interpreter interpreted Friend's response as saying, "They grabbed [Aziz] by their hands, like they—like a hug or they grabbed him by hand." According to J.A., Friend actually used an Arabic word meaning "strangled."

¶11 Second, when defense counsel asked Friend to describe how Aziz was captured, according to the court-appointed interpreter, Friend said,

> They took him, they grabbed him by hands and they had—like they—they control him and they took him outside. And then when I left the door, there was one security behind the door and he captured me, too, and grabbed me from the side.

J.A.'s interpretation states that Friend instead said,

> They strangled him and took him just like they strangled and controlled him and went out with him and when I followed out he was flat on the ground and they are [beating] him up. At that time

---

4. After the State filed its opposing memorandum in which it questioned J.A.'s credentials, Aziz filed an affidavit, signed by J.A., stating that J.A. had obtained "a certification from the Utah Department of Health for completing 'Bridging the Gap' a 40-hour training in medical interpreting" and that he was "competent in both English and Arabic." The district court did not mention this affidavit in rendering its decision.

another one was behind the door and when I was
out he grabbed me.

J.A.'s interpretation did not include an interpretation of Friend's response to defense counsel's question about whether he saw Aziz bite anyone.

¶12    The State opposed Aziz's motion, arguing that (1) J.A. did not establish that he was qualified to interpret Arabic, (2) J.A. failed to identify the precise Arabic words that were purportedly misinterpreted, (3) Aziz did not overcome the presumption that the court-appointed interpreter correctly interpreted the testimony, (4) Aziz and Friend each spoke English and Arabic and would most certainly have objected to an incorrect interpretation but did not, (5) Friend's preliminary hearing testimony was consistent with his trial testimony, and (6) there was no evidence that Friend saw Aziz bite Victim.

¶13    In response to the State's opposing memorandum, Aziz filed a supplemental exhibit to his motion, which included a third interpretation of Friend's testimony. The third interpretation was conducted by a certified American Translators Association Arabic-English interpreter (M.A.). M.A. certified that he had fifteen years of experience, that he had interpreted in several Utah courts, and that he had "taken the court interpreter test . . . and [was] waiting for the result." M.A.'s interpretation undermined J.A.'s interpretation and aligned with the court-appointed interpreter's version. Where the court-appointed interpreter used the term "grabbed him by hands," M.A. used the term "held him 'with arms around him.'" In addition, M.A. never used the word "strangle." And most significantly, where the court-appointed interpreter's translation of Friend's response was unresponsive to defense counsel's question whether Friend saw Aziz bite anyone, M.A.'s was not. According to M.A.'s interpretation, Friend first answered the question by saying, "I didn't see him," before switching subjects.

¶14   After holding a hearing on the motion, the district court denied Aziz's motion. It concluded that, even if there were inaccuracies in the interpretation, correcting them would not have resulted in a different outcome because the evidence did not show that the bite occurred after the chokehold. The court also emphasized that, if an error occurred in the translation, Aziz and Friend had ample opportunities to call it to the attention of the court, but they did not.

¶15   Aziz was sentenced to an indeterminate term of one to fifteen years in prison for aggravated assault and one year in jail for intoxication. The court credited Aziz for the days he had already served[5] and placed him on thirty-six months of probation. Aziz timely appealed.

### ISSUES AND STANDARDS OF REVIEW

¶16   Aziz contends alleged inaccuracies in the interpretation of Friend's testimony violated his right to a fair trial. Aziz first raised this argument in a combined motion for arrest of judgment or for a new trial after he was convicted but before sentencing. "When reviewing any challenge to a [district] court's denial of arrest of judgment, . . . [w]e will sustain the [district] court's decision unless the jury verdict is so inconclusive or so inherently improbable as to an element of the crime that all reasonable minds must entertain a reasonable doubt." *State v. Colwell*, 2000 UT 8, ¶ 11, 994 P.2d 177. "When reviewing a [district] court's denial of a motion for a new trial, we will not reverse absent a clear abuse of discretion by the [district] court." *Id.* ¶ 12 (citation and internal quotation marks omitted).

---

5. The record is unclear as to how many days Aziz had served, but it appears that he had served approximately one year in jail.

¶17 Second, Aziz argues for the first time on appeal that he received ineffective assistance of counsel when his counsel failed to object to the allegedly inaccurate interpretation of Friend's trial testimony. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether [the] defendant was deprived of the effective assistance of counsel as a matter of law." *Layton City v. Carr*, 2014 UT App 227, ¶ 6, 336 P.3d 587 (alteration in original) (citation and internal quotation marks omitted).

¶18 Third, Aziz contends the district court erred when it limited the scope of Expert's testimony.[6] District courts have "wide discretion in determining the admissibility of expert testimony, and such decisions are reviewed under an abuse of discretion standard." *State v. Larsen*, 865 P.2d 1355, 1361 (Utah 1993). "Under this standard, we will not reverse unless the decision exceeds the limits of reasonability." *Id.*

---

6. Aziz raises two additional arguments, but because we determine they are inadequately briefed we do not consider them. *See Bank of America v. Adamson*, 2017 UT 2, ¶ 11, 391 P.3d 196. In the first of these, Aziz argues for the first time on appeal that a portion of the State's questioning of Expert amounted to prosecutorial misconduct. Although a defendant may raise such an argument under the doctrine of plain error, Aziz merely mentions plain error in passing and does not mention, much less analyze, the required elements to prevail on such a claim. *See* Utah R. App. P. 24(a)(8) (requiring an appellant's brief to "explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal) (amended 2017). He also raises a cumulative error argument but cites no authority to support this claim or provide any reasoned analysis. *See id.*; *Adamson*, 2017 UT 2, ¶ 11.

ANALYSIS

I. Interpretation of Friend's Trial Testimony

¶19    Aziz contends he did not receive a fair trial because of several alleged errors in the interpretation of Friend's trial testimony. It does not appear that Aziz challenges the court's appointment of the interpreter. Indeed, neither he nor the State mentions the court-appointed interpreter's qualifications. Rather, Aziz complains only that the alleged deficiencies in a portion of Friend's trial testimony rendered his trial unfair. Key to this appeal, Aziz did not complain about the interpretation until he filed a post-trial motion to arrest judgment and for a new trial.

¶20    The "[f]undamental question with respect to court interpreters is normally one of qualification, not of veracity or fidelity, and, in the absence of special circumstances, the latter qualities are assumed." 21 C.J.S. *Courts* § 131 (2017); *see also State v. Van Pham*, 675 P.2d 848, 860 (Kan. 1984) (stating "[t]here is a rebuttable presumption an interpreter in the performance of his official duty has acted regularly"). The question of whether a court-appointed interpreter's performance was deficient, raised for the first time in a post-trial motion, is a matter of first impression in our courts.[7]

---

7. In *State v. Fung*, 907 P.2d 1192 (Utah Ct. App. 1995), we were presented with a similar issue of first impression: whether a district court abused its discretion in overruling a defendant's objection to the court's appointment of an interpreter. *Id.* at 1193. There, we stated that, to demonstrate the court abused its discretion, the defendant was required "to show that he was somehow denied a fair trial by the interpreter's deficiencies." *Id.* at 1194 (citation and internal quotation marks omitted).

¶21 In the present case, although the district court heard arguments about whether the interpreter's performance was deficient, it did not make any specific findings; rather, it focused on prejudice and concluded that, because Friend did not see the bite occur, any errors in the interpretation could not have prejudiced the defense. Because the court did not make findings as to the interpreter's performance per se, we do not address it.[8]

---

8. We note that other jurisdictions have addressed challenges to an interpreter's performance. Notably, the Nevada Supreme Court promulgated an approach that we do not adopt but identify as a potential aid to litigants and courts. When a party challenges the performance of an interpreter for the first time in a motion for a new trial, the Nevada Supreme Court requires the following three-step procedure:

> First, each party should have its own interpreter review the translated testimony for discrepancies. If discrepancies exist, [t]he party seeking a new trial has the burden of demonstrating the inaccuracy of the statements and that it fundamentally alters the substance of the testimony. Second, the district court should appoint an independent and, if available, certified court interpreter to review the translations. To determine whether the moving party has met its burden, the district court must consider the disputed versions of the testimony to determine whether alleged inaccuracies or omissions fundamentally alter the context of the testimony and whether the inaccuracies prejudiced the defendant such that a new trial is warranted. Third, the district court should preserve a copy of each translation for the record on appeal.

(continued…)

¶22 We conclude that any inaccuracies in the interpretation of Friend's trial testimony did not prejudice the defense. First, Friend's preliminary hearing and trial testimony were consistent that he did not see Aziz bite Victim. Consequently, he could not shed any light on Aziz's theory that he did not voluntarily bite Victim. Second, Aziz's statement to the police following the incident undermines his theory. He told police that Victim came from behind him and wrapped his arms around his neck. Aziz never explained how, given Victim's position behind him, he was able to bite Victim's face. Moreover, Aziz never claimed in his statement to the police that he involuntarily bit Victim, and he did not call any witnesses who saw the bite occur to support that theory. Accordingly, the district court did not err in denying Aziz's motion for arrest of judgment or for a new trial.

## II. Ineffective Assistance of Counsel

¶23 Aziz contends he received ineffective assistance of counsel. Specifically, he argues his counsel should have objected to the alleged inaccurate interpretation of Friend's trial testimony.

¶24 To prevail on his claim of ineffective assistance of counsel, Aziz "must show that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first element of the test, he "must overcome the strong presumption that [his] trial counsel rendered adequate assistance." *See State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (alteration in original) (citation and internal quotation marks omitted). "With respect to prejudice, a challenger must

_____

(…continued)
*Ouanbengboune v. State*, 220 P.3d 1122, 1126 (Nev. 2009) (alteration in original) (citations and internal quotation marks omitted).

demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 694).

¶25    Aziz argues his counsel's "failure to object to the subpar translation was objectively deficient" because "integral pieces of information were lost in translation." To support this contention, Aziz claims that Friend's trial testimony "included references to [Aziz] being forced, jumped, strangled, and beaten by security staff prior to and concurrent with the biting incident."

¶26    There is no indication from the record that Aziz's counsel spoke or understood Arabic. And although Aziz and Friend had familiarity with English and were fluent in Arabic, neither complained at trial that the interpretation was inaccurate. Notwithstanding, Aziz claims his counsel should have known the interpretation was faulty because counsel "had the benefit of [Friend's] preliminary hearing testimony transcript in which he testified clearly and descriptively without an interpreter." But Friend's preliminary hearing testimony weakens, not strengthens, Aziz's argument that his counsel rendered deficient performance. Friend's preliminary hearing and trial testimony were consistent: neither described the security personnel's force as "strangling" or "choking." Rather, Friend used the word "grabbed" in both instances. Without something more, we cannot conclude that counsel's failure to object to the interpretation of Friend's trial testimony constituted deficient performance. Accordingly, Aziz was not deprived of the effective assistance of counsel.

### III. Scope of Expert's Testimony

¶27    Aziz contends the district court abused its discretion when it did not allow Expert to testify to the nature of the bite wound itself. But this piece of testimony was only one portion of Expert's opinion. Indeed, the court allowed Expert to testify

about how a chokehold could have caused Aziz to suffer a seizure, thereby causing an involuntary bite. But because Expert was not a forensic dentist,[9] the court did not allow him to testify that the nature of Victim's wound suggested a defensive bite.

¶28    District courts "have wide discretion in determining the admissibility of expert testimony." *State v. Kelley*, 2000 UT 41, ¶ 11, 1 P.3d 546. "The critical factor in determining the competency of an expert is whether that expert has knowledge that can assist the trier of fact in resolving the issues before it." *Id.* ¶ 12 (citation and internal quotation marks omitted).

¶29    During trial, Expert admitted, "I'm not a forensic dentist and the police did not employ a forensic dentist in this case, so I'm not an expert in this field." Following this admission, the State objected to Expert opining about the nature of the bite wound, and the court sustained the objection. Given Expert's admission, we conclude the district court did not abuse its discretion in limiting the scope of Expert's testimony.

CONCLUSION

¶30    We conclude the district court did not abuse its discretion in denying Aziz's motion for arrest of judgment or for a new trial based on alleged inaccuracies in the interpretation of Friend's trial testimony. We also conclude Aziz did not receive ineffective assistance of counsel when his attorney did not object to the interpretation of Friend's testimony. Lastly, we conclude the district court did not abuse its discretion in limiting the scope of Expert's testimony. Accordingly, we affirm.

_____

9. Expert testified that he was an emergency room and family medicine physician. He also testified that he was a medical examiner.