**2019 UT App 36**

# THE UTAH COURT OF APPEALS

THE LODGE AT WESTGATE PARK CITY RESORT AND SPA
CONDOMINIUM ASSOCIATION INC.,
*Appellee and Cross-appellant,*
*v.*
WESTGATE RESORTS LTD. AND CFI RESORTS MANAGEMENT INC.,
*Appellants and Cross-appellees.*

Opinion
No. 20170544-CA
Filed March 14, 2019

Third District Court, Silver Summit Department
The Honorable Kara Pettit
No. 130500585

Michael A. Gehret, Michael E. Marder, and
Katheryn G. Saft, Attorneys for Appellants and
Cross-appellees

Ronald G. Russell, Matthew J. Ball, Phillip S.
Ferguson, Rebecca L. Hill, and Stephen D. Kelson,
Attorneys for Appellee and Cross-appellant

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES GREGORY K. ORME and DIANA HAGEN concurred.

APPLEBY, Judge:

¶1      Westgate Resorts Ltd. and CFI Resorts Management Inc.
(collectively, Westgate) appeal the district court's ruling that a
document outside the "Declaration of Condominium and
Declaration of Covenants, Conditions and Restrictions" (the
Declaration) for the condominium was enforceable under the
doctrines of promissory estoppel and ratification. The Lodge at
Westgate Park City Resort and Spa Condominium Association
Inc. (the Association) appeals the district court's determination

that the term "Common Areas and Facilities" under the Declaration is limited to the building's foundation. We affirm.

BACKGROUND

¶2     Westgate is the developer of a resort in Park City, Utah. The resort includes timeshare units as well as whole ownership units. Construction of the whole ownership portion began in 2006 and is known as the Lodge at Westgate Park City Resort & Spa (the Project).

¶3     Westgate started selling condominium units at the Project before construction commenced. The parties do not dispute that "prospective purchasers received [a] draft [of] [the Declaration], the Purchase & Sale Agreement, the Bylaws of the Association, the Association's Articles of Incorporation, and an estimated budget for assessments for 2007."[1]

¶4     The Purchase & Sale Agreement informed purchasers that the Project was in a pre-construction phase, stating "the buyer acknowledges that the seller has disclosed to the buyer that a final subdivision map for the condominium has not yet been approved and recorded." The Purchase & Sale Agreement further disclosed that "the budget was only an estimate and that actual costs for the line items were subject to change." The Declaration was recorded in 2007.

¶5     The Project was completed in 2008. The 2009 budget was the first to be prepared for the Project in its fully operational form. The proposed 2009 budget was substantially higher than the 2007 estimated budget and the 2008 budget.[2] By this time, condominium sales had mostly come to a stop due to the

---

1. The estimated budget in 2007 totaled $1,376,208.

2. The 2009 budget totaled $2,251,660.

collapsed national economy. Many owners were upset by the proposed 2009 budget. "More than 40 owners called and/or emailed the Resort's General Manager [(General Manager)] and members of his team . . . expressing their dissatisfaction with and rejection of the proposed budget." "The predominant sentiment of the owners was to try to work out a solution with Westgate rather than pursue litigation, although litigation was definitely an option for many of the owners." Some owners met with attorneys to explore legal alternatives. A group of owners retained counsel and threatened legal action against Westgate. The Chief Operating Officer (COO) of Westgate was aware of these threats.

¶6     Dissatisfaction among the owners caused General Manager to set up a "conference call with all interested owners to explore solutions to the problems created by the proposed 2009 budget." During the conference call, General Manager requested that the owners establish a group which became known as the Owners Finance Committee (the OFC). The OFC's purpose "was to work with Westgate to achieve a mutual agreement between the developer and the homeowner[s] with regards to the budget . . . start[ing] with cost allocation methodologies and continu[ing] to the HOA fee." General Manager notified COO about the OFC and of his efforts to resolve the budget concerns with the OFC. COO expressed his approval of the committee and "encouraged an on-going dialogue between Westgate and the OFC." Neither Westgate nor any of the owners objected to the formation or composition of the OFC.

¶7     Over the next five months, the OFC and Westgate met "essentially weekly" to work on a compromise budget and methodology. Throughout the process the OFC reported its progress to General Manager and solicited feedback from the owners. General Manager also reported the progress to Westgate's senior management (including COO). During the negotiations, the OFC requested to meet with COO to discuss various issues with the proposed 2009 budget. Before the

meeting, General Manager provided COO with a summary of his meetings with the OFC, including the issues they had resolved. General Manager told COO that "he had been able to forestall a class action lawsuit by forming the OFC and working with it in good faith to resolve the budget crisis." COO met with several members of the OFC in July 2009.

¶8      On November 6, 2009, General Manager sent a letter to all the owners and Westgate stating that there were still some issues to be resolved. It stated that "[t]he methodology outlined in the [Budget] exhibits applies to all future budget preparation and will be the guideline on how we decide on expenses moving forward on the 2010 budget and thereafter." The letter also stated "[t]here may be some inconsistencies in various condominium documents but the [Budget] exhibits take precedent over those for the associated budget items." Around November 19, 2009, one of the members of the OFC sent an amended budget document to General Manager. He responded by email, stating it "looked great and it look[ed] like everything [was] covered as discussed."

¶9      The OFC met with General Manager on November 23, 2009, and General Manager signed each page of the finalized budget document (the 2009 Budget Methodology). The district court's findings of fact stated, "Westgate . . . and the OFC understood that the [2009 Budget Methodology] was inconsistent with the [Declaration] in many particulars. That is why [the November 6, 2009 letter] stated that the [2009 Budget Methodology] took precedence over the inconsistent provisions in the Declaration."

¶10     The 2009 Budget Methodology determined the Project's budgets for the next four years. During these years, Westgate never disavowed the November 6, 2009 letter and did not inform the OFC or the owners that the 2009 Budget Methodology was invalid.

¶11    Throughout the negotiation process up to the date the 2009 Budget Methodology was signed, "Westgate was aware that several condominium owners had consulted or were continuing to consult counsel" regarding the increased proposed budget. But once the 2009 Budget Methodology went into effect, not a single owner filed a lawsuit against Westgate. The owners relied on the 2009 Budget Methodology and, with this reliance, let the statutes of limitation lapse on their various claims. The owners also paid their retroactive assessments to Westgate for the years 2009 to 2013 in reliance on the 2009 Budget Methodology.

¶12    Around 2013, a fresh dispute arose between Westgate and the owners after new management took over operation of the resort. The dispute began because the budget for 2013 deviated from the 2009 Budget Methodology in a number of ways.[3] The Association filed a lawsuit against Westgate and Westgate counterclaimed. Westgate and the Association each filed cross-motions for a preliminary injunction. The court held a hearing on the motions and ordered the parties to abide by the 2009 Budget Methodology during the pendency of the litigation.

¶13    After a bench trial, the district court issued findings of fact and conclusions of law and ruled that the 2009 Budget Methodology was enforceable under the doctrines of promissory estoppel and ratification.[4] The parties moved to amend and clarify the findings of fact and conclusions of law, and the court amended its findings. A final judgment was entered in 2017 and each side appealed.

---

3. This included an increase in the "Amenity Use Fee," which is discussed in connection with our review of the cross-appeal. *See infra* Part III.

4. The court also made additional findings with respect to the cross-appeal that are discussed in more detail below. *See infra* Part III.

ISSUES AND STANDARDS OF REVIEW

¶14     We address two of the issues Westgate raises on appeal.[5] First, Westgate argues the Association does not have standing to

_____

5. Westgate raised three other issues we decline to address. First, Westgate challenges the district court's determination that the 2009 Budget Methodology "is enforceable under the principle of ratification even though [the court] found that [Westgate's General Manager] lacked authority" to ratify the 2009 Budget Methodology and "neither Westgate nor the owners received a copy of the [2009 Budget Methodology]." We decline to address this argument because Westgate failed to preserve it below and failed to argue on appeal that an exception to the preservation requirement applies. *See Blanch v. Farrell*, 2018 UT App 172, ¶ 17 ("This court generally will not consider an issue on appeal unless it has been preserved or the appellant asserts that a valid exception to the preservation rule applies."). Westgate argues that it "had no opportunity to address" the ratification issue because it "was never part of the pleadings," "was not litigated at trial," and "was raised for the first time in [the Association's] closing argument (which was after post-trial briefing)." But after reviewing the record, we conclude Westgate had multiple opportunities to challenge ratification as an inappropriate basis on which to enforce the 2009 Budget Methodology. Westgate failed to "specifically" challenge the issue "in a timely manner" and support the challenge with "evidence and relevant legal authority." *Id.* (quotation simplified).

        Second, Westgate argues for the first time on appeal that the district court erred in concluding "that the 2009 Budget Methodology would control over any inconsistencies in the Shared Use Agreement or the Declaration because it essentially acts as an amendment to both the Shared Use Agreement and Declaration without following the proper procedures for a formal amendment." Westgate also challenges this conclusion on the basis that "the Utah Condominium Ownership Act requires that any amendments to a condominium declaration be recorded

(continued…)

seek enforcement of the 2009 Budget Methodology because the court determined "that the owners, not the Association, relied upon Westgate's promise and ratified Westgate's conduct." "Whether a party has standing is primarily a question of law, which we review for correctness." *Edwards v. Powder Mountain Water and Sewer*, 2009 UT App 185, ¶ 10, 214 P.3d 120.

¶15 Second, it contends the facts of the case preclude the district court from enforcing the 2009 Budget Methodology

---

(…continued)

to be valid." *See* Utah Code Ann. § 57-8-12 (LexisNexis 2010) (stating "[n]either the declaration nor any amendment thereof shall be valid unless recorded"). After reviewing the record, we conclude neither of these arguments were preserved. Westgate never challenged the district court's finding under the statute nor did it argue that promissory estoppel and ratification were improper means for enforcing the 2009 Budget Methodology. Westgate only argued that the elements of promissory estoppel were not met in this case.

Finally, Westgate contends the district court erred when it "fail[ed] to award Westgate damages for the Association's underpayment of the Shared Amenities Fee after the [court] concluded that the Shared Amenities Fee was not capped by the 2009 Budget Methodology." On appeal, the appellant "must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." Utah R. App. P. 24(a)(8); *see also Bank of Am. v. Adamson*, 2017 UT 2, ¶¶ 12–13, 391 P.3d 196 (explaining that there is no "bright-line rule determining when a brief is inadequate," but "[a]n appellant that fails to devote adequate attention to an issue" and fails to "cite the legal authority on which its argument is based" is "almost certainly going to fail to meet its burden of persuasion" (quotation simplified)). Westgate failed to support its argument on this issue with any citation to legal authority. We decline to address this argument because it is inadequately briefed.

under the doctrine of promissory estoppel. Promissory estoppel is a doctrine of equitable relief, which presents "mixed questions of fact and law." *Richards v. Brown*, 2009 UT App 315, ¶ 11, 222 P.3d 69 (quotation simplified). We therefore review the district court's factual findings for clear error and its legal conclusions for correctness. *Id.*

¶16   The Association raises three issues in its cross-appeal. First, it contends the district court erred "by interpreting the Declaration to limit the [Condominium's] common areas and facilities to [the Project's] foundation contrary to the Declaration's own provisions and the Utah Condominium Ownership Act."

¶17   Second, the Association contends the district court "erred by ignoring the evidence that the parties to [the 2009 Budget Methodology] intended all budget categories, including the amenities use fee, to be subject to a future increase[] clause, and by reducing damages awarded to the [Association] for excess fees charged by Westgate." "We interpret the provisions of the Declaration as we would a contract." *B. Investment LC v. Anderson*, 2012 UT App 24, ¶ 9, 270 P.3d 548 (quotation simplified). "The interpretation of a contract is a question of law, which we review for correctness, giving no deference to the ruling of the district court." *Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 2011 UT 33, ¶ 19, 258 P.3d 539. "Likewise, the determination of whether a contract is facially ambiguous is a question of law, which we review for correctness." *McNeil Eng'g & Land Surveying, LLC v. Bennett*, 2011 UT App 423, ¶ 7, 268 P.3d 854. And we "resolve questions of facial ambiguity in a contract according to the parties' intent, which is a question of fact." *Id.* "If the contract is ambiguous and the [district] court makes findings regarding the intent of the parties, we will not disturb those findings unless they are clearly erroneous." *Allstate Enters., Inc. v. Heriford*, 772 P.2d 466, 468 (Utah Ct. App. 1989).

¶18   Finally, the Association argues the district court "erred by declining to adopt certain features of the Association's proposed

Final Judgment and Order based on a determination that [it] did not comply with Rule 58A" of the Utah Rules of Civil Procedure. "We review the [district] court's interpretation of a rule of civil procedure for correctness." *Solis v. Burningham Enters. Inc.*, 2015 UT App 11, ¶ 11, 342 P.3d 812.

ANALYSIS

I. Standing

¶19 Westgate challenges the district court's enforcement of the 2009 Budget Methodology by arguing that the owners, not the Association, relied on Westgate's promises. According to Westgate, this creates a "standing problem."

¶20 "Utah standing law operates as a gatekeeper to the courthouse, allowing in only those cases that are fit for judicial resolution." *Utah Chapter of Sierra Club v. Utah Air Quality Bd.*, 2006 UT 74, ¶ 17, 148 P.3d 960 (quotation simplified). It is a "jurisdictional requirement that must be satisfied before a court may entertain a controversy between two parties." *Packer v. Utah Att'y Gen.'s Office*, 2013 UT App 194, ¶ 8, 307 P.3d 704 (quotation simplified). The traditional test for standing requires a party to "allege that he or she has suffered or will imminently suffer an injury that is fairly traceable to the conduct at issue such that a favorable decision is likely to redress the injury." *Chen v. Stewart*, 2005 UT 68, ¶ 50, 123 P.3d 416 (quotation simplified).

¶21 Traditional standing doctrines aside, Utah law specifically allows homeowners' associations (HOAs) to bring claims on behalf of their members even when the HOA does not experience a direct injury. Utah Code Ann. § 57-8-33 (LexisNexis 2010). The statute states,

> Without limiting the rights of any unit owner, actions may be brought by the manager or management committee . . . on behalf of two or

> more unit owners . . . with respect to any cause of
> action relating to the common areas and facilities
> or more than one unit.

*Id.* This statute "expressly reserves the rights of the unit owners" while also allowing "representation by the management committee on behalf of *two or more* unit owners." *Brickyard Homeowners' Ass'n Mgmt. Comm. v. Gibbons Realty Co.*, 668 P.2d 535, 538 (Utah 1983) *superseded on other grounds by constitutional amendment as stated in Brown v. Cox*, 2017 UT 3, 387 P.3d 1040. Under the statute, the lawsuit brought by an HOA must also "relate to the common areas and facilities or more than one unit." *Id.* at 541.

¶22    Here, the Association brought suit on behalf of "two or more unit owners." Utah Code Ann. § 57-8-33 (LexisNexis 2010). The lawsuit also concerns "common areas and facilities or more than one unit." *Id.* Based on the record and the arguments presented, the Association has standing under the statute to sue on behalf of the owners.[6] *Id.*

---

6. In its reply brief, Westgate makes two unpersuasive arguments why the statute is inapplicable in this case. First, Westgate argues that the Association is not a "management committee" under the statute because the Association only has the power to maintain common areas and facilities, not the property. *See* Utah Code Ann. § 57-8-3(20) (LexisNexis 2010). Second, Westgate argues the statute is inapplicable because this lawsuit arose out of a dispute over a budget document not "common areas or units." These conclusory statements do not adequately articulate why the statute does not apply here. An issue is inadequately briefed when it "merely contains bald citations to authority without development of that authority and reasoned analysis based on that authority." *Bank of Am. v. Adamson*, 2017 UT 2, ¶ 11, 391 P.3d 196 (quotation simplified).

(continued…)

## II. Promissory Estoppel

¶23  Westgate contends the district court erred when it "concluded that the Association was entitled to a declaration that the terms of the 2009 Budget Methodology are enforceable under the doctrine of promissory estoppel."

¶24  Promissory estoppel is "employed where injustice can be avoided only by the enforcement of the promise." *Hess v. Johnston*, 2007 UT App 213, ¶ 22, 163 P.3d 747. The elements of promissory estoppel are:

> (1) the plaintiff acted with prudence and in reasonable reliance on a promise made by the defendant; (2) the defendant knew that the plaintiff had relied on the promise which the defendant should reasonably expect to induce action or forbearance on the part of the plaintiff or a third person; (3) the defendant was aware of all material facts; and (4) the plaintiff relied on the promise and the reliance resulted in a loss to the plaintiff.

*Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶ 16, 158 P.3d 1088 (quotation simplified).

¶25  Westgate challenges the finding of promissory estoppel on two grounds. First, it argues promissory estoppel cannot

---

(…continued)
Appellate courts "are not a depository in which the appealing party may dump the burden of argument and research." *Id.* (quotation simplified). Westgate does not provide reasoned analysis why the Association is the improper party to bring the lawsuit and why the 2009 Budget Methodology does not relate to common areas and facilities or more than one unit under the statute.

apply because the promise in this case was too indefinite and lacked the essential terms to create a binding agreement. Second, it argues promissory estoppel cannot apply because the owners did not reasonably rely on the promise.

A.      Clear and Definite Promise

¶26    "Promissory estoppel involves a clear and definite promise." *Mitchell v. ReconTrust Co.*, 2016 UT App 88, ¶ 53, 373 P.3d 189 (quotation simplified). The promise "must be reasonably certain and definite, and a claimant's subjective understanding of the promisor's statements cannot, without more, support a promissory estoppel claim." *Id.* (quotation simplified). Here, the 2009 Budget Methodology and the negotiations surrounding it culminated in a definite promise.

¶27    The district court determined that "the evidence shows that Westgate promised to reduce the Association's 2009 budget and generate future budgets in accordance with an agreed methodology." The court further stated, "Westgate, via [General Manager], expressly represented to the owners that the 2009 Budget Methodology Agreement would be used to prepare the budgets in 2010 and thereafter." Westgate assisted the owners in forming the OFC so they could negotiate and reach a new resolution regarding the budget. The owners, the Association, and Westgate were all aware that the agreement reached was the 2009 Budget Methodology, and the district court found that Westgate promised to adhere thereto.

¶28    This case is distinguishable from *Mitchell* in which this court upheld the district court's conclusion that promissory estoppel cannot apply when the promise "is so indefinite that it lacks—literally—any terms." *Mitchell*, 2016 UT App 88, ¶ 54 (quotation simplified). In *Mitchell*, the Mitchells were told that "once they missed two payments, they could *apply* for a loan modification," but the Mitchells interpreted this single statement to mean "they had been assured that a loan modification would occur." *Id.* (quotation simplified). The evidence in *Mitchell*

showed that "the Mitchells, at most, had a subjective understanding that they had been assured" of a loan modification. *Id.* (quotation simplified).

¶29　In this case, the owners had more than a subjective understanding of Westgate's promises. The 2009 Budget Methodology was an agreement that took effect after five months of negotiations. The resulting promise was also sufficiently definite to enable the parties to act "in accordance with the 2009 Budget Methodology for no less than four years." We affirm the district court's determination that the 2009 Budget Methodology represented a clear and definite promise.

B.　Reasonable Reliance

¶30　The district court also determined that the owners reasonably relied on Westgate's promises under the 2009 Budget Methodology by refraining from filing various lawsuits and by paying their association dues.

¶31　The evidence shows that the "owners reasonably relied upon the representations of Westgate by relinquishing their legal rights to bring suits against Westgate within the statute of limitations period." The owners also reasonably relied on Westgate's representations in "paying their Association dues in accordance with the 2009 Budget Methodology Agreement in 2009–2012." The "[e]vidence demonstrated that numerous owners were contemplating litigation, and after the OFC reached an agreement with Westgate regarding the 2009 Budget Methodology, all such threats were dropped and not a single owner pursued litigation." Ultimately, "[t]he 2009 Budget Methodology Agreement brought peace to the valley, as it was intended to do."[7] We affirm the district court's conclusion that

---

7. Westgate contends this case is similar to *Johannessen v. Canyon Road Towers Owners Association* in which this court struck down a contract between a single unit owner and the HOA where the

(continued…)

the 2009 Budget Methodology induced reasonable reliance by the owners. Ample evidence supports enforcing the 2009 Budget Methodology under the theory of promissory estoppel.

## III. The Cross-appeal

¶32    In its cross-appeal the Association argues the district court made three errors. Additional factual context is necessary to understand each of these arguments.

¶33    The Association first argues that the court made an erroneous factual determination that the Declaration limited "Common Areas and Facilities" to the building's foundation. In its complaint, the Association sought declaratory and injunctive relief that the Association, not Westgate, controls the common areas of the Project. The district court dismissed this cause of action finding that the common areas are controlled by Westgate under the Declaration.

¶34    The Association next argues the district court erred in its finding that the "Amenities Use Fee" of the 2009 Budget Methodology is not subject to a future increases clause. As part of the sales launch for the Project, potential purchasers were

(…continued)
HOA agreed to assess the unit owner at a lower monthly rate. 2002 UT App 332, ¶ 5, 57 P.3d 1119. This contract was unenforceable as contrary to the governing statute as well as the condominium declaration. *Id.* ¶ 28. And this court held that the owner could not "rely upon promissory estoppel . . . because it was unreasonable for [him] to rely upon the . . . promise." *Id.* This case is distinguishable because Westgate had the authority to amend the Declaration in the manner that it did. Further, the November 6, 2009 letter sent to the owners explicitly notified them the 2009 Budget Methodology "take[s] precedent over those associated budget items" in the Declaration and Shared Use Agreement.

informed they would be able to use amenities from existing projects for a fee instead of having to build new amenities. The 2007 budget provided to the potential purchasers included an Amenities Use Fee. The proposed 2009 budget kept the Amenities Use Fee the same as the 2007 budget but the owners' use of amenities and the fees they would pay were further negotiated as part of the 2009 Budget Methodology. During negotiations the Association wanted to keep the Amenities Use Fee the same for 2010 to 2011 and afterwards have the fee subject to a future increases clause. But the future increases clause did not appear on the finalized 2009 Budget Methodology. The Association argued the reason the agreement regarding the future increases clause did not appear on the finalized 2009 Budget Methodology is that the Amenities Use Fee agreement was provided as a pdf file and the OFC did not know how to merge the future increases clause language into the final document because it was a pdf. The district court rejected this argument and ruled that because the future increases clause was omitted from the final 2009 Budget Methodology the parties did not intend to limit the amenities fees and therefore the Association could not claim the right to a refund of those higher payments in its damages claim.

¶35 Finally, the Association argues the district court erred in declining to adopt the Association's proposed final judgment and order for failing to comply with rule 58A of the Utah Rules of Civil Procedure. At the conclusion of trial the court invited each side to submit post-trial briefs. After the briefs were submitted the court issued its findings of fact and conclusions of law, which were subsequently amended at the request of both sides. In the amended findings the court asked the Association to submit a proposed form of judgment. After the Association submitted the proposed form, the court determined that its form was improper and declined to sign it. The Association argues this decision was in error and asks us to remand with instructions for the court to amend its judgment accordingly.

A.      Common Areas and Facilities

¶36     The Association contends the district court erred by interpreting the Declaration to limit the Project's "Common Areas and Facilities" to the building's foundation.

¶37     "We interpret the provisions of the Declaration as we would a contract. If the Declaration is not ambiguous, we interpret it according to its plain language." *View Condo. Owners Ass'n v. MSICO, LLC.*, 2005 UT 91, ¶ 21, 127 P.3d 697 (quotation simplified). "If the [district] court determines the contract is ambiguous," "[w]e review the trial court's construction based on extrinsic evidence under the more deferential clearly-erroneous standard." *West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1313 (Utah Ct. App 1991).[8]

¶38     After reviewing the Declaration's plain language and considering it as a whole, the district court found that "an ambiguity exists regarding the meaning and use of the term Common Areas and Facilities." Article V of the Declaration refers to "Common Areas and Facilities" as consisting "of the foundation of the building containing the Units underneath the

_____

8. At the outset, the Association argues the district court's interpretation of the Declaration conflicts with the Utah Condominium Ownership Act. The Association contends the Act's definition of "Common Areas and Facilities" "explicitly includes 'the foundations, columns, girders, supports, main walls, roofs, halls, corridors' and 'all other parts of the property necessary or convenient to its existence, maintenance, and safety, or normally in common use.'" (Citing Utah Code Ann. § 57-8-3(4)(b) (LexisNexis 2010).) The Act does not require Common Areas and Facilities of condominium projects to include any of these. Instead, by stating "unless otherwise provided in the declaration," the Act defers to the governing documents for a definition of Common Areas and Facilities. Utah Code Ann. § 57-8-3(4) (LexisNexis 2010).

surface of the earth as more particularly described in the Plat." But the Association pointed out several other provisions of the Declaration that conflicted with the interpretation that "Common Areas and Facilities" is limited to the foundation. Some of those provisions referenced "pipes, shafts, wires" and other utilities, which the court agreed created an ambiguity over the meaning of "Common Areas and Facilities." We agree with the court that the Declaration is ambiguous.

¶39 The district court then considered extrinsic evidence to resolve the ambiguity. It looked to the Plat, Amended Plat, and the Declaration and determined that the parties intended to limit the "Common Areas and Facilities" to the foundation. The original Plat recorded in 2007 included a note that stated that "Common Areas and Facilities consist of the foundation of the building." An Amended Plat was recorded in 2009 and contained the same note as the 2007 Plat but also contained a separate sheet that depicted the foundation as the "Common Areas and Facilities" of the Project. Based on this evidence the court made a factual finding that "Common Areas and Facilities" is limited to the building's foundation.

¶40 "A party challenging the court's interpretation of ambiguous terms of a contract faces a substantial appellate burden." *Majestic*, 818 P.2d at 1313. We will "affirm the [district] court's findings if they are based on sufficient evidence, viewing the evidence in the light most favorable to the [district] court's construction." *Id.* Here, the Association has not adequately challenged the district court's factual finding that the "Common Areas and Facilities" is limited to the building's foundation and it has not demonstrated that this finding was clearly erroneous. *See Allstate Enters., Inc. v. Heriford*, 772 P.2d 466, 468 (Utah Ct. App. 1989). Based on the evidence presented, we conclude the court did not clearly err in determining that "Common Areas and Facilities" under the Declaration is limited to the foundation.

B.      Amenity Use Fee

¶41    The Association also argues the "trial court erred by ignoring evidence that the parties to the 2009 Budget Methodology Agreement intended all budget categories, including the Amenity Use Fee, to be subject to a Future Increase Clause." As a result the Association contends the district court erred in refusing to grant the Association damages for overpaying the Amenity Use Fee from 2013 to 2016.

¶42    First, the Association argues the district court's finding of fact regarding the Amenity Use Fee was clearly erroneous. "A [district] court's factual findings are clearly erroneous only if they are in conflict with the clear weight of the evidence, or if this court has a definite and firm conviction that a mistake has been made." *Bonnie & Hyde, Inc. v. Lynch*, 2013 UT App 153, ¶ 17, 305 P.3d 196 (quotation simplified). "Consequently, as an appellate court, we give great deference to the [district] court and do not lightly disturb its factual findings." *Id.* (quotation simplified).

¶43    The district court found that the 2009 Budget Methodology "ratified by Westgate and applied by the Association to the 2014–16 budgets" was "not subject to a Future Increase Clause." And the Association concedes the 2009 Budget Methodology does not contain any language that would apply a future increase clause to the Amenity Use Fee.

¶44    But the Association argues this finding was clearly erroneous because "[t]he evidence showed that the only reason a future increases clause does not appear on the face of [the 2009 Budget Methodology] is that [General Manager] provided that page in PDF, rather than as an amendable Word document, and the OFC was not technically savvy enough to augment the document with the language of the future increase clause." The Association also argues that General Manager agreed to a future increases clause to the Amenities Use Fee in an email. The district court did not find this argument persuasive because the

email exchange was "in the midst of the parties' negotiations and discussions regarding the budget and was not the final agreement ratified by Westgate." The final agreement ratified by Westgate does not have the future increases clause so "it is the content of [the final agreement] that controls, not a statement made by [General Manager] in the midst of negotiations."

¶45   Our review of the record demonstrates that the district court's finding regarding the future increase clause is not against the clear weight of the evidence and therefore is not clearly erroneous. *See Bonnie & Hyde,* 2013 UT App 153, ¶ 17.

¶46   Next, the Association argues that because the factual finding was clearly erroneous, the district court also erred in failing to award the Association damages for overpaying the Amenity Use Fee. But because we conclude the court did not err in its factual finding, we also conclude the court did not err in refusing to grant the Association damages. The court found "the budgets during 2014–16 were voted on and approved by the Association after Westgate no longer controlled the [Association's] Board." And contrary to the Association's argument, the court's preliminary injunction did not require the Association to include the higher figures from 2013 in future budgets during the pendency of this litigation." The court's preliminary injunction required the parties to establish budgets in compliance with the 2009 Budget Methodology. If the budgets did not comply but were nevertheless agreed to, it was "not because of a breach of fiduciary duty by Westgate, but an error by the Association no longer controlled by Westgate."

¶47   Because the "Amenities Use Fee" is not subject to a future increases clause, we affirm the district court's refusal to grant the Association damages for any overpayment of the "Amenity Use Fee."

C.    The Judgment

¶48    Finally, the Association contends the district court erred "by rejecting certain features of the [Association's] Proposed Final Judgment and Order." The court rejected the Association's proposed final judgment and order because it did not comply with rule 58A of the Utah Rules of Civil Procedure. This rule requires that "[e]very judgment and amended judgement must be set out in a separate document." Utah R. Civ. P. 58A(a).[9]

¶49    The district court found that the Association's "proposed Final Judgment and Order does not comply with Rule 58A, [f]ederal case law interpreting the counterpart found in the federal rules, or the Advisory Committee's directives." Instead, the court ruled that the Association's proposed order "recites facts and procedural history and contains rulings not made by this Court in its Amended, Corrected, and Clarified Findings of Fact and Conclusions of Law, or in its separate Ruling and

---

9. We base our decision solely upon the plain language of rule 58A. Nevertheless, we also observe that the Utah Supreme Court's Advisory Committee on the Rules of Civil Procedure's explanation of what constitutes a "separate document" supports our conclusion. The Advisory Committee Notes to rule 58A suggest following federal precedent on the issue and using three criteria to determine whether a proposed judgment submitted is a "separate document." Utah R. Civ. P. 58A advisory committee note to 2015 amendments. First, the document must be "independent of the court's opinion or decision." *In re Cendant Corp.*, 454 F.3d 235, 242 (3d Cir. 2006). Second, it "must note the relief granted." *Id.* Third, the proposed judgment "must omit (or at least substantially omit) the District Court's reasons for disposing of the parties' claims." *Id.* While some "trivial departures must be tolerated in the name of common sense," they must be "very sparse." *Kidd v. District of Columbia*, 206 F.3d 35, 39 (D.C. Cir. 2000).

Order." Based on these deficiencies, the court refused to sign the Association's proposed judgment.

¶50    We agree with the district court that the Association's proposed judgment does not comply with rule 58A because it was not set out in a separate document.

## CONCLUSION

¶51    The Association had standing to bring its claims against Westgate seeking enforcement of the 2009 Budget Methodology. The district court did not err in enforcing the 2009 Budget Methodology under the doctrine of promissory estoppel. Likewise, the court did not err in interpreting the Declaration to limit the "Common Areas and Facilities" to the building's foundation nor did it err in determining the Amenities Use Fee is not subject to a future increases clause. Finally, the court did not err when it refused to adopt the Association's proposed judgment. We affirm.